# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SEAFREEZE SHORESIDE, INC.
100 Davisville Pier,
North Kingstown, RI 02852

LONG ISLAND COMMERCIAL FISHING
ASSOC., INC.
P.O. Box 191
Montauk, NY 11954

XIII NORTHEAST FISHERY SECTOR, INC.
205 Rockland Street
 Dartmouth, MA 01748

HERITAGE FISHERIES, INC.
6 Rhody Drive
Westerly, RI 92891

NAT. W. INC.
6 Rhody Drive
Westerly, RI 92891

OLD SQUAW FISHERIES, INC.
P.O. Box 1036
Montauk, NY 11954

*Plaintiffs,*

v.

THE UNITED STATES DEPARTMENT OF
THE INTERIOR

HONORABLE DEB HAALAND, *in her*
*official capacity as the Secretary of the*
*Department of the Interior*

THE BUREAU OF OCEAN ENERGY
MANAGEMENT

AMANDA LEFTON, *in her official capacity*
*as the Director of the Bureau of Ocean Energy*
*Management*
LAURA DANIEL-DAVIS, *in her official*

Civil Action No. 1:21-cv-03276-CRC

*capacity as Principal Deputy Assistant*
*Secretary, Land and Minerals Management,*
*Department of the Interior*

THE UNITED STATES DEPARTMENT OF
COMMERCE

HONORABLE GINA M. RAIMONDO,
*in her official capacity as the Secretary of the*
*Department of Commerce*

THE NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION
/NATIONAL MARINE FISHERIES SERVICE

KIM DAMON-RANDALL, *in her official*
*capacity as Director of the National*
*Marine Fisheries Service Office of Protected*
*Resources*

THE UNITED STATES DEPARTMENT OF
DEFENSE

HONORABLE LLOYD J. AUSTIN, *in*
*his official capacity as the Secretary of the*
*Department of Defense*

THE UNITED STATES ARMY CORPS OF
ENGINEERS

LT. GEN. SCOTT A. SPELLMON, *in his*
*official capacity as the Commander and Chief*
*of Engineers of the United States Army Corps*
*of Engineers*, and

COLONEL JOHN A. ATILANO II, *in his*
*official capacity as the District Engineer of the*
*New England District of the United States*
*Army Corps of Engineers,*

                                    *Defendants.* [1]

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kim Damon-Randall, in her official capacity as Director of the National Marine Fisheries Service Office of Protected Resources, is automatically substituted for Catherine Marzin.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## TO TRANSFER VENUE TO THE DISTRICT OF MASSACHUSETTS

DATED: January 18, 2022

*Of Counsel:*

Pedro Melendez-Arreaga
Lead Attorney-Advisor
Offshore Renewable Energy Team
Division of Mineral Resources
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Washington, D.C. 20240
(202) 513-7759
pedro.melendez-arrea@sol.doi.gov

Matthew J. Harris
Assistant District Counsel
U.S. Army Corps of Engineers
New England District
696 Virginia Road
Concord, MA 01742
 (978) 318-8244
matthew.j.harris@usace.army.mil

Lea Tyhach
Attorney - Advisor
National Oceanic and Atmospheric
Administration
Office of General Counsel, Northeast Section
55 Great Republic Drive
Gloucester, MA 01930
(978) 281-9242
lea.tyhach@noaa.gov

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Perry M. Rosen*
PERRY M. ROSEN
D.C. Bar No. 374087
Senior Attorney
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 353-7792
E-mail: perry.rosen@usdoj.gov

MARK ARTHUR BROWN
D.C. Bar No. 470050
Senior Trial Attorney
Wildlife and Marine Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0204
Fax: (202) 305-0275
E-mail: mark.brown@usdoj.gov

LUTHER L. HAJEK
CO Bar 44303
Trial Attorney
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1376
Fax: (303) 844-1350
E-mail: luke.hajek@usdoj.gov

*Attorneys for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

BACKGROUND...................................................................................................................3

      A.      The Project and Defendant Agencies ..................................................................3

      B.      The Plaintiffs and the Complaint .......................................................................5

      C.      Similar Challenges Already Filed in the District of Massachusetts......................6

STANDARD OF REVIEW FOR CONSIDERING A TRANSFER REQUEST .........................7

ARGUMENT .......................................................................................................................8

I.     PLAINTIFFS COULD HAVE BROUGHT THIS ACTION IN THE DISTRICT
      OF MASSACHUSETTS ................................................................................8

II.    THE PUBLIC INTEREST AND PRIVATE CONSIDERATIONS STRONGLY
      SUPPORT TRANSFER OF THIS ACTION TO MASSACHUSETS............................10

      A.      Plaintiffs' and Defendants' Choice of Forum - Private Factors 1 and 2...............11

      B.      The Claims Did Not Arise in the District of Columbia – Private Factor 3 ..........13

      C.      Convenience of the Parties and Witnesses – Private Factors 4 and 5...................14

      D.      The Ease of Access to Sources of Proof – Private Factor 6 ...............................15

      E.      Familiarity of the Transferee Court with the Law and the Pendency
           of Related Litigation – Public Interest Factor 1...................................................16

      F.      Relative Congestion of Court Calendars – Public Interest Factor 2....................17

      G.      The Public Interest in Having Local Controversies Decided at Home –
           Public Interest Factor 3......................................................................................18

CONCLUSION...................................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Alaska Wilderness League v. Jewell,*
    99 F. Supp. 3d 112 (D.D.C. 2015) ................................................................19, 21

*Am. Dredging Co. v. Miller,*
    510 U.S. 443 (1994) ........................................................................................19

*Armco Steel Co. v. CSX Corp.,*
    790 F. Supp. 311 (D.D.C. 1991) ...................................................................11

*Camp v. Pitts,*
    411 U.S. 138 (1973).......................................................................................15

*\*Citizen Advocs. for Responsible Expansion, Inc. (I-Care) v. Dole,*
    561 F. Supp. 1238 (D.D.C. 1983) ...................................................... 3, 11, 20

*City of West Palm Beach v. U.S. Army Corps of Eng'rs,*
    317 F. Supp. 3d 350 (D.D.C. 2018) ...............................................................19

*Colo. River Conservation Dist. v. United States,*
    424 U.S. 800 (1976).......................................................................................13

*Cont'l Grain Co. v. Barge FBL-585,*
    364 U.S. 19 (1960).........................................................................................12

*Fed. Housing Fin. Agency v. First Tenn. Bank Nat'l Ass'n,*
    856 F. Supp. 2d 186 (D.D.C. 2012) ...............................................................17

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985).......................................................................................15

*FTC v. Cephalon, Inc.,*
    551 F. Supp. 2d 21 (D.D.C. 2008) .................................................................17

*Ganote Consulting & Software Design. Inc. v. Imperial Optical Inc.,*
    No. 02-65, 2002 WL 31375036 (W.D. Ky. Oct. 17, 2002)...................................13

*Greater New Orleans Fair Hous. Action Ctr. v. HUD,*
    723 F. Supp. 2d 14 (D.D.C. 2010) ..........................................................

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947).......................................................................................19

*Gulf Restoration Network v. Jewell,*
    87 F. Supp. 3d 303 (D.D.C. 2015) .................................................................20

*Handy v. Shaw, Bransford, Villeaux, & Roth,*
  325 F.3d 346 (D.C. Cir. 2003) ...................................................................................17

*Harris v. Republic Airlines, Inc.,*
  699 F. Supp. 961 (D.D.C. 1988) .................................................................................19

*Hawksbill Sea Turtle v. FEMA,*
  939 F. Supp. 1 (D.D.C. 1996) .....................................................................................8

*ITT World Commc'n, Inc. v. FCC,*
  621 F.2d 1201 (2d Cir.1980) .....................................................................................12

*Nat'l Indus. for Blind v. Dep't of Veteran Affairs,*
  296 F. Supp. 3d 131 (D.D.C. 2017) ...........................................................................17

*Nat'l Parks Conservation Ass'n v. Zinke,*
  No. 18-753, 2018 WL 9650176 (D.D.C. July 25, 2018) ....................................10, 17

*Nat'l Wildlife Fed'n v. Harvey,*
  437 F. Supp. 2d 42 (D.D.C. 2006) ........................................................................17, 18

*Neighbors Against Bison Slaughter v. Nat'l Park Serv.,*
  No. 19-3144, 2019 WL 6035356  (D.D.C. Nov. 14, 2019)........................................16

*Niagara Pres. Coal., Inc. v. FERC,*
  956 F. Supp. 2d 99 (D.D.C. 2013) .........................................................................8, 11

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981)....................................................................................................11

*Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs,*
  893 F. Supp. 2d 49 (D.D.C. 2012) ...............................................10, 16, 18, 19, 20

*Stewart Org.. Inc. v. Ricoh Co.,*
  487 U.S. 22 (1988)........................................................................................................7

*S. Utah Wilderness All. v. Lewis,*
  845 F. Supp. 2d 231 ("SUWA") (D.D.C. 2012)..........................................................8

*S. Utah Wilderness All. v. Norton,*
  No. 01-2518, 2002 WL 32617198 (D.D.C. June 28, 2002) .......................................18

*Shawnee Tribe v. United States,*
  298 F. Supp. 2d 21 (D.D.C. 2002) .............................................................................20

*Sierra Club v. Flowers,*
  276 F. Supp. 2d 62 (D.D.C. 2003) .................................................................16

*Smith v. S.E.C.,*
  129 F.3d 356 (6th Cir. 1997) ........................................................................13

*\*Trout Unlimited v. Dep't of Agric.,*
  944 F. Supp. 13 (D.D.C.1996) .......................................................... 10, 18, 19

*Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior,*
  669 F. Supp. 2d 88 (D.D.C. 2009) ................................................................11

*U.S. Dominion, Inc. v. Powell,*
  No. 21-00040, 2021 WL 3550974 (Aug. 11, 2021) .......................................11

*\*Valley Cmty. Pres. Comm'n v. Mineta,*
  231 F. Supp. 2d 23 (D.D.C. 2002) ...........................................8, 10, 11, 16, 20

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964).................................................................................7, 8

*W. Watersheds Project v. Tidwell,*
  306 F. Supp. 3d 350 (D.D.C. 2017) ...............................................................19

*Wildearth Guardians v. U.S. Bureau of Land Mgmt.,*
  922 F. Supp. 2d 51 (D.D.C. 2013) ................................................................11

*Wise v. United States,*
  128 F. Supp. 3d 311 ....................................................................................13

**Statutes**
5 U.S.C. § 706 ............................................................................................15

16 U.S.C. § 1540(g)(3)(A) ............................................................................ 8

16 U.S.C. § 1631 ......................................................................................... 4

28 U.S.C. § 1391(e)(1) ................................................................................ 8

28 U.S.C. § 1391(e)(2) ................................................................................ 7

28 U.S.C. § 1391(e)(2)(B) ............................................................................ 9

28 U.S.C. § 1404(a) ................................................................................7, 10

33 U.S.C. § 403 ........................................................................................... 5

33 U.S.C. § 1344 ................................................................................................ 5

43 U.S.C. § 1349(b)(1) ...................................................................................... 8

**Code of Federal Regulations**
50 C.F.R. § 402.16 ............................................................................................ 5

**Federal Registers**
86 Fed. Reg. 33,810 (June 25, 2021) ................................................................ 5


**Other Authorities**

15 Wright Miller & Cooper, Federal Practice and Procedure, § 3844 (1986) ............................13

# INTRODUCTION

This case was filed by six commercial fishing entities against three United States government agencies: the Bureau of Ocean Energy Management ("BOEM"), the National Marine Fisheries Service ("NMFS"), and the U.S. Army Corps of Engineers ("Corps") (collectively the "Agencies"), and their parent or related agencies and officials. Plaintiffs challenge the Agencies' approvals of various aspects of a wind turbine energy project to be constructed off the coast of Massachusetts, known as the Vineyard Wind Project ("Project"). Plaintiffs allege that the Project, and hence the Agency approvals, will damage Plaintiffs' commercial or pecuniary interests by limiting their ability to fish in the area encompassed by the Project and will further result in injury to certain marine species and various aspects of the marine environment.

A plaintiff challenging orders or approvals issued by agencies of the United States government may file their challenge in a number of different venues, including in any district where the agencies are present, which generally includes the United States District Court for the District of Columbia. Congress, however, established a process to transfer such challenges to another federal district court where venue also is proper, when it serves judicial economy, is in the public interest, and does not cause undue hardship to the parties. Such transfers are regularly granted where, as here, they: (a) involve challenges to an agency's compliance with environmental statutes in approving a site-specific project; and (b) that project and the environmental (and other) injuries are alleged to occur in a geographic region outside the district (i.e., the venue) chosen by the plaintiff.

Other than the fact that certain of Defendant Agencies maintain offices in this District, the present action has essentially no connection to Washington, D.C. To the contrary, the

1

Vineyard Wind Project is not located in this part of the country, the Plaintiffs neither reside nor conduct their business (fishing) in this part of the country, Plaintiffs' counsel is not located in this part of the country, and none of the alleged environmental impacts and other injuries that purportedly emanate from the Project are alleged to occur in this part of the country. On these bases alone, the present action should be transferred to the judicial district that is the locus of all of these actions and purported effects; the United States District Court for the District of Massachusetts.

Other factors make transfer of this action to the District of Massachusetts particularly appropriate. Two other cases have been filed against the identical Agencies, challenging their issuance and approval of the identical agency actions and permits that Plaintiffs challenge here. Those two prior-filed lawsuits are presently before a single Judge in the United States District Court for the District of Massachusetts. The parties would be subject to duplicative efforts, disparate schedules, and potentially conflicting judgments should challenges to the identical Project and agency actions proceed in separate District Courts.

There will be no inconvenience to the Parties from transfer of this case to the District of Massachusetts. First, as noted, neither Plaintiffs nor their counsel reside or work in or near this District. Instead, Plaintiffs are located in Massachusetts, Rhode Island and New York. Moreover, this is a "record review" case, to be decided based on the administrative record generated by the Agencies in promulgating the subject permits and other challenged agency actions. Because this case will involve no depositions, discovery or testimony, there is no inconvenience to Plaintiffs, as they will not be required to travel to Massachusetts to testify or otherwise actively participate in person.

Finally, resolution of Plaintiffs' claims will neither be delayed nor otherwise prejudiced as a result of the proposed transfer. The Massachusetts District Court has not made any substantive rulings and the present action can be accommodated under the schedule established by that Court. Accordingly, Plaintiffs here would suffer no prejudice if this action is transferred to Massachusetts, since they have not missed any substantive or other important proceedings. Further, resolution of Plaintiffs' claims will not be unduly delayed. Pursuant to schedules proposed by the parties, the District of Massachusetts has established a schedule that calls for the prompt filing of the administrative record and the filing of cross-motions for summary judgment with briefing to be completed by October, 2022.

Plaintiffs have a full right to have their challenge to the subject Agency actions considered in federal District Court. They do not, however, have an absolute right to pursue such a challenge separate and apart from other similar challenges and in a District that has no connection to the challenged project or the purported injuries that Plaintiffs allege they will suffer should the approved project proceed. As this Court stated years ago and has repeated many times with regard to federal agency approvals of large projects, "justice requires that . . . localized controversies should be decided at home." *Citizen Advocs. for Responsible Expansion, Inc. (I-Care) v. Dole*, 561 F. Supp. 1238, 1240 (D.D.C. 1983). For these reasons and those more fully detailed below, the Court should transfer this action to the District of Massachusetts.

## BACKGROUND

### A.   The Project and Defendant Agencies

The Vineyard Wind Project is an offshore wind energy project planned for an area on the Outer Continental Shelf that is approximately fourteen miles south/southeast of both Martha's Vineyard and Nantucket Island, Massachusetts, and 35 miles from mainland Massachusetts. ECF Doc. 1 (Complaint) at Ex. C (Doc. 1-C), p. 1. *See also* Ex. 1 at 7 (Map), 10. The Project

3

will include a maximum of 84 wind turbines spaced one nautical mile apart from each other.[2] The Project is expected to produce 800 megawatts of electricity, supplying electricity to approximately 400,000 homes in Massachusetts. Vineyard Wind-1; Ex.1 pp. 4-6.

In January 2015, following a multi-year process involving extensive efforts by an intergovernmental renewable energy task force comprised of elected officials from State, local, and tribal governments in New England and other Federal agency representatives, Defendant U.S. Bureau of Ocean Energy Management ("BOEM"), a component of Defendant Department of Interior, held a competitive lease sale, which was awarded to Offshore MW, LLC and later assigned Vineyard Wind 1 LLC ("Vineyard Wind"). Ex. 1 at 4-6. In December 2017, Vineyard Wind sought BOEM's approval of the Project's Construction and Operations Plan ("COP"). BOEM then initiated a lengthy review under the National Environmental Policy Act ("NEPA"), which included five public hearings in Massachusetts and Rhode Island. *Id.* Cooperating state agencies included the Massachusetts Office of Coastal Zone Management, the Rhode Island Coastal Resource Management Council, and the Rhode Island Department of Environmental Management. Vineyard Wind-1. On March 3, 2021, BOEM published a notice of availability of its environmental impact statement ("EIS") for the project and subsequently issued a Supplemental EIS ("SEIS"). Ex. 1 at 6.

BOEM also initiated consultation under the Endangered Species Act ("ESA") with Defendant National Marine Fisheries Service ("NMFS"), a component of Defendants National Oceanic and Atmospheric Administration ("NOAA") and Department of Commerce. Acting pursuant to the ESA, NMFS issued a Biological Opinion ("BiOp") on September 11, 2020, addressing the Project's potential effects on listed species and designated habitat. *Id.* NMFS also issued an Incidental Harassment Authorization ("IHA") under the Marine Mammal Protection Act, 16 U.S.C. § 1631 *et seq.* ("MMPA"), for a small number of marine mammals that may be harassed incidental to Project construction. 86 Fed. Reg. 33,810 (June 25, 2021). In

---

[2] https://www.vineyardwind.com/vineyardwind-1 ("Vineyard Wind-1"). The Complaint mistakenly reports that up to 100 turbines will be included in the Project.

response to a request from BOEM to reinitiate ESA consultation pursuant to regulations, 50 C.F.R. § 402.16, NMFS issued a new biological opinion on October 18, 2021, as subsequently corrected on November 1, 2021.

Working both separately and in conjunction with the other agencies, Defendant U.S. Army Corps of Engineers ("Corps"), a component of Defendant U.S. Department of the Army, issued a permit for certain limited aspects of the Project under section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, and section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403.

On May 10, 2021, the Defendant agencies (BOEM, NMFS and the Corps) issued a Joint Record of Decision ("ROD") describing their respective actions. Ex. 1. On July 15, 2021, BOEM approved Vineyard Wind's COP for the Project, subject to various terms and conditions. *Id*. at 54-99 (listing conditions). These actions, approvals and permits effectively allow Vineyard Wind to proceed with the Project, subject to federal requirements contained in the above-described approvals and permits as well as Massachusetts State law requirements. State permits or approvals (which are not at issue here) include those issued by the Massachusetts Energy Facility Siting Board, the Massachusetts Executive Office of Energy and Environmental Affairs, the Cape Cod Commission, the Martha's Vineyard Commission, and Conservation Commissions in the towns of Barnstable and Edgartown, Massachusetts. Vineyard Wind-1.

    **B.**    **The Plaintiffs and the Complaint**

The Plaintiffs are six commercial fishing entities and/or fishing trade associations located, respectively, in Massachusetts, Rhode Island, and on the tip of Long Island (Montauk, New York). Doc. 1 (Complaint) at Caption, ¶¶ 6-11. As Plaintiffs themselves assert, the bulk of commercial fisheries that utilize the Vineyard Wind lease area are from Massachusetts, Rhode Island, and New York. *Id*. at ¶ 62.

Plaintiffs' Complaint, which contains 347 numbered paragraphs and includes 33 separate counts, requests that the various Agency approvals and permits be declared illegal and be

vacated. Plaintiffs contend that Defendant Agencies, through the approval of an offshore lease, the approval of the Construction Operations Plan (COP), the granting of permits, and related agency actions, violated various provisions or requirements of the Outer Continental Shelf Lands Act ("OSCLA"), the Endangered Species Act (ESA), the Clean Water Act (CWA), the Marine Mammal Protection Act ("MMPA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedures Act ("APA"). The Complaint alleges two types of injuries resulting from these alleged violations: injury to the ability of Plaintiffs to conduct their commercial operations (i.e., economic injury), and purported injury to fish, marine mammals, and the marine environment in and around the Project area.

C.    **Similar Challenges Already Filed in the District of Massachusetts**

There is no dispute that there are two prior-filed cases pending in the District of Massachusetts that challenge the same Agency actions and are based on the same administrative record that will form the record in this case. Along with their Complaint in this case Plaintiffs filed a Notice of Related Actions, listing the following actions: (1) *Ack Residents Against Turbines, et al v. Bureau of Ocean Energy Management*, No. 1-21-cv-11390-IT (D. Mass) ("*Ack Residents*"); (2) *Allco Renewable Energy Limited, et al. v. Deb Haaland, et al.*, No. 1-21-cv-11171-IT (D. Mass) ("*Allco*"); and (3) *Responsible Offshore Development Alliance, et al, v. Debra Haaland, et al.*, No. 21-1660 (1st Cir.) ("*RODA*"). ECF Doc. 3. Because of the similarity of the claims raised in *Allco* and *Ack Residents* and the fact that they were challenging the same government actions, the latter was transferred to the Honorable Indira Talwani (who was assigned to the first-filed *Allco* case), to ensure that the cases are consolidated or otherwise

coordinated as they proceed.[3]  While there are differences in the wording of some of the claims
and counts, as they were drafted by different counsel on behalf of different plaintiffs, the
Complaints in *Allco* (Ex. 2) and *Ack Residents* (Ex. 3) seek essentially the same relief (vacating
approvals and permits), from the same Agencies (BOEM, NMFS, the Corps and their parent and
related agencies), for the same Agency actions (described in the Joint Record of Decision, Ex. 1),
taken with regard to the same project (the Vineyard Wind Project).

### STANDARD OF REVIEW FOR CONSIDERING A TRANSFER REQUEST

Defendants do not dispute that under 28 U.S.C. § 1391(e)(2) Plaintiffs were permitted to
file their Complaint in this Court. Regardless, however, of the technical propriety of venue, the
Court has broad authority to transfer the case to another more appropriate district.  *Stewart Org..
Inc. v. Ricoh Co.,* 487 U.S. 22, 31 (1988).  As Congress declared: "[F]or the convenience of
parties and witnesses, in the interest of justice, a district court may transfer any civil action to
any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

The purpose of this statute, among others, is to provide a district court with a mechanism
to allow for transfer "in order to prevent the waste of time, energy, and money; and to protect
litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen
v. Barrack,* 376 U.S. 612, 616 (1964).  Thus, the statute facilitates the transfer of cases to a more
appropriate federal forum.  *Id.* (affording district courts broad discretion to transfer venue
"according to an individualized, case-by-case consideration of convenience and fairness.").  *See*

---

[3] In *RODA*, filed in the First Circuit Court of Appeals, the court granted a Joint Motion to stay
that case on the basis that subject matter jurisdiction for RODA's claims lies in the District
Court, not the Court of Appeals.  *RODA*, Case No. 21-1660, Docs. 00117798436 (Joint Motion),
00117805141 (Order). RODA has not at this point refiled its claims in District Court.

*also Valley Cmty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 44–45 (D.D.C. 2002); *Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 (D.D.C. 1996).

District courts are to use a two-step analysis to determine whether a case should be transferred. A court must first determine if the case could have been brought in the transferee district. *S. Utah Wilderness Alliance v. Lewis* ("*SUWA*"), 845 F. Supp. 2d 231, 235 (D.D.C. 2012). If the answer is in the affirmative, the Court then turns to an analysis of the public and private interests supporting transfer. The factors the Court should consider in assessing the public and private interests are set forth below.

## ARGUMENT

## I.   PLAINTIFFS COULD HAVE BROUGHT THIS ACTION IN THE DISTRICT OF MASSACHUSETTS                                                      

The "threshold question" under 28 U.S.C. § 1404(a) is whether Plaintiffs could have brought this action in the District of Massachusetts, the transferee court proposed by Federal Defendants. *Niagara Pres. Coal., Inc. v. FERC*, 956 F. Supp. 2d 99, 103 (D.D.C. 2013); *Van Dusen v. Barack*, 376 U.S. at 616-17. The venue provision, 28 U.S.C. § 1391(e)(1), provides that

> a civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity. . . or an agency of the United States or the United States may . . . be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides . . . .

The ESA venue provision further provides that "[a]ny suit under this subsection may be brought in the judicial district in which the violation occurs." 16 U.S.C. § 1540(g)(3)(A). The OCSLA venue provision contemplates that cases challenging OCS activities should be heard in the judicial district nearest where the activities would occur. 43 U.S.C. § 1349(b)(1). There is no

8

question that Plaintiffs' lawsuit could have been brought in the District of Massachusetts under these authorities.

First, much of the agency work done in issuing the challenged permits and other challenged agency actions occurred in offices of defendant Agencies in Massachusetts or other offices outside of the District of Columbia.  For instance, Col. John A. Atilano II, Commander and District Engineer of the U.S. Army Corps of Engineers New England District, signed the Record of Decision on behalf of the Corps.  The Corps' New England District is headquartered in Concord, Massachusetts, which is where most of the Corps' work on this matter was performed.  Michael Pentony, NMFS Regional Administrator for the Greater Atlantic Region, approved the Biological Opinion.  The NMFS Greater Atlantic Region is headquartered in Gloucester, Massachusetts, where again much of the Agency's work on this matter occurred.  Similarly, much of the work done by BOEM occurred outside the District of Columbia.

Second, it is clear that "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated," directly off the coast of Massachusetts. 28 U.S.C. § 1391(e)(2)(B).  The Complaint in this case challenges the Agencies' approvals of the installation of an offshore wind turbine project that is to be installed 14 miles off the coast of Martha's Vineyard and Nantucket, Massachusetts.  Moreover, a portion of the Project is on land in Massachusetts.  The cables that transfer the energy from the turbines come ashore at a proposed transfer facility near Barnstable, Massachusetts and the project is to supply energy to 400,000 homes in Massachusetts under contracts with three electric distribution utilities in Massachusetts.  Ex. 2 at 19, ECF Doc. 7 at p.8.

Additionally, the Complaint alleges various environmental injuries, *all of which* purportedly occur in the same project area, which is closer to Massachusetts than any other State. For example, the Complaint asserts that Defendant Agencies failed to analyze or address purported injuries to fish and aquatic resources in special aquatic zones, which Plaintiffs assert are in the immediate Project area. ECF Doc. 1(Complaint) ¶¶ 132-34, 248-51 (alleging these zones are within 10 miles of the Project area).

Finally, one of the six Plaintiffs is resident in Massachusetts and all assert that injuries to their commercial and economic interests will occur as a result of being restricted from fishing in the area of the Project, which again is off the coast of Massachusetts.

## II.    THE PUBLIC INTEREST AND PRIVATE CONSIDERATIONS STRONGLY SUPPORT TRANSFER OF THIS ACTION TO MASSACHUSETS

After concluding that the subject action could have been brought in the transferee court, the Court is to then assess both the private- and public-interest factors that underlie the case-specific discretionary transfer inquiry under 28 U.S.C. § 1404(a).  The private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof.  *See Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C.1996).  The public-interest factors include: (1) the transferee's familiarity with the governing laws and the pendency of related litigation; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home.  *Pres. Soc'y of Charleston v. U.S. Army Corps of Engineers*, 893 F. Supp. 2d 49, 53-54 (D.D.C. 2012) ("*Charleston*"); *Mineta*, 231 F. Supp. 2d at 44–45; *Nat'l Parks Conservation Assn. v. Zinke*, No. 18-753, 2018 WL 9650176 at *2 (D.D.C. July 25, 2018). In this case, each of these factors supports transfer to the District of Massachusetts.

10

A.    <u>Plaintiffs' and Defendants' Choice of Forum - Private Factors 1 and 2</u>

While a plaintiff's choice of forum is generally entitled to some deference, that is not the case here. First, this deference is "greatly diminished when the activities have little, if any, connection with the chosen forum." *Mineta*, 231 F. Supp. 2d at 44, quoting *Armco Steel Co. v. CSX Corp.,* 790 F. Supp. 311, 323 (D.D.C. 1991). Thus, a defendant's necessary showing "is lessened when the 'plaintiff[s'] choice [of forum] has no factual nexus to the case,' and, where . . . transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." *Id.,* (quoting *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1240 (D.D.C. 1983)). *See also Niagara Pres. Coal.,* 956 F. Supp. 2d at 104 ("[P]laintiff lacks significant ties to the District of Columbia, and need not be afforded the substantial deference given to litigants in choosing their home forum."); *Wildearth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F. Supp. 2d 51, 55 (D.D.C. 2013) ("Accordingly, plaintiffs' choice of forum is only worthy of 'diminished consideration,' and thus weighs only weakly against transfer."); *Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009) (deference courts usually give to a plaintiff's choice of forum is weakened where plaintiffs do not reside in the forum and "most of the relevant events occurred elsewhere." (citation omitted)). As outlined above, the Plaintiffs, the Project they challenge, and the alleged injuries from that Project, have substantial ties to the District of Massachusetts and no contacts to the District of Columbia.

Plaintiffs' chosen venue will also receive less deference where the Plaintiffs brought suit outside their home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *U.S. Dominion, Inc. v. Powell*, No. 21-00040, 2021 WL 3550974 at *17 (D.D.C. Aug.

11

11, 2021).  As outlined above, Plaintiffs reside and do business in Massachusetts, Rhode Island, and New York, not in – or anywhere near – the District of Columbia.

In contrast to Plaintiffs' preferred forum, Defendants' choice of venue, the District of Massachusetts, is based on a number of factors.  First, the Project is located in Massachusetts and/or directly off its coast.  Second and more importantly, as outlined above all purported harm is alleged to occur in or in direct proximity to Massachusetts and nowhere near the District of Columbia.

Furthermore, Defendants seek to transfer this case to the District of Massachusetts because there already exist two cases in that District that challenge the same agency actions, carried out by the same Agencies, based on the same administrative record, making claims of violation of the same environmental statutes.  It is a well-recognized practice for courts to consolidate challenges to a final agency action into a single case or into parallel coordinated matters in the same court.  *ITT World Commc', Inc. v. FCC*, 621 F.2d 1201, 1208 (2nd Cir.1980) ("[T]here is a policy of unifying related proceedings in a single court, and obtaining consistent results.").  That is because there are often multiple plaintiffs challenging a federal agency action and failing to transfer subsequently filed actions would result in parallel litigation and duplication of judicial resources.  *Cont'l. Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

As evidenced by Plaintiffs' filing of its Notice of Related Actions, as well as a review of the Complaints in each action, there can be little doubt that the present action challenges the same federal Agencies' approvals, of the same project, under the same statutes, based on the

same administrative record, making many of the same legal arguments, as that challenged in the *Allco* and *Ack Residents* cases pending in Massachusetts. "The general rule applicable when duplicative lawsuits are pending in separate federal courts is 'that the entire action should be decided by the court in which the action was first filed.'" *Ganote Consulting & Software Design. Inc. v. Imperial Optical Inc.*, No. 02-65, 2002 WL 31375036, at *2 (W.D. Ky.), quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). *See also Wise v. United States*, 128 F. Supp. 3d 311. 317 (D.D.C. 2015), quoting *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("'The general principle is to avoid duplicative litigation' between federal district courts."); 15 Wright Miller & Cooper, Federal Practice and Procedure, § 3844 p. 329 n.2 (1986) (transfers are much favored on the ground that the interest of justice is served by avoiding duplicative litigation). Here, two actions asserting similar claims to those that Plaintiffs raise here were first filed in the District of Massachusetts. *See* Exs. 2 and 3.

### B.    The Claims Did Not Arise in the District of Columbia – Private Factor 3

As outlined above, in considering a Motion to Transfer under 28 U.S.C. § 1404(a), the Court should consider whether the claims arose outside its district. The face of the Complaint makes clear that the claims arose in a district (and area of the country) other than the District of Columbia. For instance, Plaintiffs, who are or represent commercial fishermen, allege in their Complaint (emphasis added):

1.      "Because the ability to fish *in the Vineyard Wind lease area* is key to the survival of the Plaintiffs as ongoing businesses, they will be economically ruined by the Federal Defendants' collective action in approving the project." ECF Doc. 1 at ¶ 3

2.      "Seafreeze's entire business is injured because the issuance of Lease OCS-A-0501 and the approval of the Construction and Operations Plan will result in the

13

cessation of commercial fishing activities *in the Vineyard Wind lease area*, on which Seafreeze depends for a substantial portion of its revenues." *Id.* at ¶ 6;

        3.      BOEM purportedly violated statutory requirements by:

           a.      Failing to consider "the use of the *project area* for a fishery;" (*Id.* at ¶ 159);

           b.      "Failing to ensure safe travel for commercial fishing boats;" (*Id.* at ¶ 174);

           c.      Approving "construction [that] would likely kill, displace, or disturb *local species;* (*Id.* at ¶ 175);

           d.      Approving a project that will impact "mammal populations *in the lease area*" (*Id.* at ¶ 176);

           e.      Approving a project that will "unreasonably bar access to and unreasonably interfere with fishing activities and navigation *in the lease area*" (*Id.* at ¶ 178); and

           f.      Approving a project that "does not properly consider the impacts of the Vineyard Wind project on survival and recovery of endangered species *in the project area* (*Id.* at ¶ 208).

Similar claims are made against the other Defendant agencies. Thus, the Complaint makes plain that none of the alleged injuries to Plaintiffs' interests occurred in the District of Columbia. Rather, the Complaint demonstrates that Plaintiffs' claims arose in the District of Massachusetts, where the challenged project is located and where their injuries are to allegedly occur.

14

### C.       Convenience of the Parties and Witnesses – Private Factors 4 and 5

There is no basis to conclude that the District of Massachusetts is any less convenient for parties or witnesses than the District of Columbia.   First, as noted, this is a record review case that will be decided on motions based on the administrative record.  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."); *Camp v. Pitts,* 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").  Thus, there will be no court testimony, no depositions, and no discovery.

To the extent there are hearings before the Court, there is no basis to conclude that Massachusetts is less convenient than the District of Columbia.   As noted, the Plaintiffs are located in Massachusetts, Rhode Island and New York and none of the Plaintiffs are located in or anywhere near the District of Columbia.   Further, although the cases make clear that the location of counsel is not generally relevant to a transfer motion, Plaintiffs' counsel is the Texas Public Policy Foundation located in Austin, Texas, while Defendants understand that Plaintiffs' lead counsel lives and works in Sacramento, California.   Thus, there is no basis to conclude that the District of Columbia is any more convenient for Plaintiffs or their counsel than Boston, Massachusetts.

### D.       The Ease of Access to Sources of Proof – Private Factor 6

While the location of the record has been considered by some courts in addressing a motion to transfer, that is irrelevant here.  The administrative record of all the Defendant Agencies will be transmitted electronically to Plaintiffs' counsel (and to the Court) on the date it

is due.  There is no office, warehouse or other "location" that the Plaintiffs must travel to in order to review or obtain any part of the administrative record.

Indeed, where a case is generally one to be decided on the administrative record generated by government agencies, this factor (as well as convenience of the parties and witnesses, private factors 4 and 5 discussed above) are effectively nullified.  *Charleston*, 893 F. Supp.2d at 56:

> The final two private-interest factors, the convenience of witnesses and the ease of access to sources of proof, are neutral with respect to transfer.  In all likelihood, this case will be decided on the basis of the administrative record, without discovery.  *See* 5 U.S.C. § 706; *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).   These two factors then "[have] less relevance [to the transfer inquiry] because this case involves judicial review of an administrative decision...." *Trout Unlimited,* 944 F. Supp. at 18; *see also SUWA I,* 315 F. Supp. 2d at 88 (finding convenience of witnesses irrelevant where case would be decided solely on administrative record); *Sierra Club,* 276 F. Supp. 2d at 69 ("the location of witnesses is not a significant factor" in judicial review of agency action).

*See also Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. 19-31442019 WL 6035356 at 6 (D.D.C. Nov. 14, 2019) ("Resolution of these claims [under NEPA and the APA are based on the administrative record and] will not turn on the testimony of witnesses and thus the first three factors are neutral.").

### E.   Familiarity of the Transferee Court with the Law and the Pendency of Related Litigation – Public Interest Factor 1

The issue of the familiarity of the transferee court with the governing law is of no moment.  As this Court has explained, "as the action concerns federal law, neither court is better suited than the other to resolve these issues." *Mineta*, 231 F. Supp. 2d at 54.  *See also, Charleston*, 893 F. Supp. 2d at 57 ("The Court sees no need to deviate from "the principle that the transferee federal court is competent to decide federal issues correctly."); *Sierra Club v. Flowers,* 276 F. Supp. 2d 62, 70 n. 6 (D.D.C. 2003) (Since "both courts are competent to

interpret the federal statutes involved[,]  ... there is no reason to transfer or not transfer based on this factor."); *Nat'l Wildlife Fed'n v. Harvey,* 437 F. Supp. 2d 42, 49 (D.D.C. 2006).

In contrast, the pendency of challenges to the same agency actions is a critical factor supporting transfer here. The existence of a similar challenge in another district has often been found by this Court to be a compelling reason supporting transfer. *Nat'l Indus. for Blind v. Dep't of Veteran Affairs,* 296 F. Supp. 3d 131, 142 (D.D.C. 2017) quoting *Handy v. Shaw, Bransford, Villeaux, & Roth,* 325 F.3d 346, 349 (D.C. Cir. 2003) ("'[P]arallel litigation of factually related cases in separate fora is inefficient' and should be avoided.'"); *Parks Conservation Ass'n. v. Zinke,* 2018 WL 9650176 at *2 ("Since both cases involve common issues of fact and law, the interest of judicial economy and the risk of conflicting judgments between this Court and the Central District strongly weigh in favor of transfer."); *FTC v. Cephalon, Inc.,* 551 F. Supp. 2d 21, 29 (D.D.C. 2008) ("The most significant factor weighing in favor of transferring [a] case is the presence of closely related litigation"); *Fed. Housing Fin. Agency v. First Tenn. Bank Nat'l Ass'n,* 856 F. Supp. 2d 186, 196 (D.D.C. 2012) (transferring case "in order to avoid duplicative and potentially inconsistent rulings"). *See also* pp 13, *supra,* reiterating this point and explaining that the duplicative case should be transferred to the jurisdiction of the first-filed case.

## F.    Relative Congestion of Court Calendars – Public Interest Factor 2

There is no evidence that there is congestion in the District of Massachusetts relative to the docket in this Court that would warrant retaining this case in this Court. To the contrary, Defendant Agencies submitted a proposed schedule in the District of Massachusetts that calls for: (a) Defendant Agencies to answer or otherwise respond to the Complaint by March 11, 2022 or sooner; (b) Defendant Agencies to submit the administrative record by April 12, 2022; and (c) the parties to file cross-motions for summary judgment, with briefing commencing on June 17,

2022 and concluding October 18, 2022.  That schedule was approved by the Court on January

11, 2022 and now governs both cases pending in the District of Massachusetts. Exs.4 and 5.

The swift and comprehensive nature with which the cases are proceeding in the District

of Massachusetts establishes that there is no prejudice to Plaintiffs from transfer, as their claims

will be fully addressed without delay in the District of Massachusetts. *See Charleston*, 893 F.

Supp. 2d at 57:

> Given the early stage at which Defendants have requested transfer in this case,
> moreover, their request raises no other concerns regarding judicial efficiency.
> *Compare, Trout Unlimited,* 944 F. Supp. at 19 (finding no delay would result
> from transfer of a case "in its earliest stages") *with Greater New Orleans Fair
> Hous. Action Ctr. v. HUD,* 723 F. Supp. 2d 14, 27 (D.D.C. 2010) (finding
> interests of justice weighed against transfer where district court was "familiar
> with the facts and legal issues raised," and had issued "two opinions  ... [that were]
> on appeal to the D.C. Circuit).

### G.    The Public Interest in Having Local Controversies Decided at Home – Public Interest Factor 3

Turning to what many courts have deemed to be the most important factor in considering

a motion to transfer, the public interest, *see, e.g.*, *S. Utah Wilderness Alliance*, No. 01-2518,

2002 WL 32617198, at *5 (D.D.C. June 28, 2002), as this Court has explained "[c]ontroversies

should be resolved in the locale where they arise." *Trout Unlimited v. U.S. Dep't of Agriculture*,

944 F. Supp. at 19.  *See also Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d at 49; *Armco Steel

Co. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991) (the interest in having local

controversies decided locally is compelling);  *Harris v. Republic Airlines, Inc.*, 699 F. Supp. 961,

963 (D.D.C. 1988);  *Charleston*, 893 F. Supp. 2d at 57:

> In this case, which "[touches] the affairs of many persons, there is reason for
> holding the trial in their view and reach rather than in remote parts of the country
> where they can learn of it by report only." *Gulf Oil Corp. v. Gilbert,* 330 U.S.
> 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also Adams v. Bell,* 711 F.2d
> 161, 167 n. 34 (D.C.Cir.1983) (noting a preference for resolving cases within
> view of people "whose rights and interests are in fact most vitally affected by the

18

suit"); *Armco Steel Co. v. CSX Corp.,* 790 F. Supp. 311, 324 (D.D.C.1991). Other district courts in this circuit have held that "this policy rationale applies equally to the judicial review of an administrative decision ... limited to the administrative record." *Trout Unlimited,* 944 F. Supp. at 19. This makes sense as any hearing would take place in view of Charleston's citizens if the case were transferred.

The Supreme Court has similarly emphasized the importance of ensuring that local issues are decided in their home venue. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947); *Am. Dredging Co. v. Miller,* 510 U.S. 443, 448 (1994) ("There is a local interest in having localized controversies decided at home.").

Nowhere is this more true than where the case involves challenges to federal agency determinations made under federal environmental laws for site-specific projects:

> Consistently, district courts in this circuit have held that the mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer. *See, e.g., Sierra Club,* 276 F. Supp. 2d at 68 ("[P]recedent in this circuit does not require or even encourage resolution in this forum of [Endangered Species Act] and other [federal] environmental claims....").

*Charleston,* 893 F. Supp. 2d at 55. *See also City of West Palm Beach v. U.S. Army Corps of Engineers,* 317 F. Supp. 3d 350 (D.D.C. 2018); *Western Watersheds Project v. Tidwell,* 306 F. Supp. 3d 350 (D.D.C. 2017); *Alaska Wilderness League v. Jewell,* 99 F. Supp. 3d 112, 117 (D.D.C. 2015); *Trout Unlimited,* 944 F. Supp. at 19 ("[S]uits such as this one, which involve water rights, environmental regulation, and local wildlife . . . should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit [reside].'"); *Mineta,* 231 F. Supp. 2d at 47 ("At bottom, the resolution of this action will have its most profound impact on [Massachusetts] residents who live in the area of the proposed construction project."); *Shawnee Tribe v. United States,* 298 F. Supp. 2d 21, 26 (D.D.C. 2002) (local interest in deciding a local controversy considered to be "most persuasive factor" for granting transfer); *Gulf Restoration Network v. Jewell,* 87 F. Supp. 3d 303, 316 (D.D.C. 2015)

19

("The court agrees with Defendants that this case should be litigated within the 'view and reach' of the people who will be 'most vitally affected' by its outcome."). And as a former member of this Court prudently stated, "justice requires that such localized controversies should be decided at home." *I–CARE,* 561 F. Supp. at 1240.

Plaintiffs' long and comprehensive Complaint contains no mention of the District of Columbia, except in the caption identifying this Court and in the paragraph asserting venue. In stark contrast, the Complaint alleges in paragraph after paragraph that both the alleged violations and, more importantly, the purported effects of those violations, did or will occur in and around the Project area, which is just off the coast of Massachusetts. "Where any potential impacts are to be felt locally, the controversy is truly local to the District" in which those purported impacts will be felt. *Charleston,* 893 F. Supp. 2d at 58 (citing cases finding that venue should be transferred to the locality where the purported consequences will be felt).

It is no answer to assert that because the claims involve federal issues that may apply in other jurisdictions or because there might be subsequent wind projects in other parts of the country, review in the District of Columbia is warranted. *Id.* at 55 (citing cases, noting "[c]onsistently, district courts in this circuit have held that the mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer."). Under such reasoning almost every challenge to every federal approval of a local project would be litigated in the District of Columbia.

Moreover, as explained above, even a cursory review of the Complaint evidences that Plaintiffs allegations and claims of injury are specific to the project being conducted in Massachusetts, not to the general application of federal law throughout the nation. Moreover, even if certain issues raised by Plaintiffs might also be raised on other projects, that does not tilt

20

the public interest toward adjudicating claims that are directly related to the waters off of Massachusetts from Massachusetts to the District of Columbia. *See, e.g.*, *Alaska Wilderness League*, 99 F. Supp. 3d at 117 ("[E]ven accepting that this case touches upon some national concerns, it is beyond cavil that the regulation most directly affects Alaskan lands, livelihoods, waters, and wildlife."). In sum, the interest in deciding local controversies at home strongly favors transfer of this case to the District of Massachusetts.

## **CONCLUSION**

Plaintiffs had the right to file their action in this Court but their initial choice of where to file is not sufficient to rebut a motion to transfer the case to a court where the challenged project is to occur, where the alleged impacts are to be sustained, and where the interested parties are located. Weighing all the factors, including the fact that Plaintiffs will suffer no prejudice or inconvenience from transfer and that judicial economy and avoidance of potential conflicting decisions will be served by having all challenges to Defendant Agencies' actions challenged in a single court under a coordinated schedule, justice strongly favors transfer of this action to the District of Massachusetts. Accordingly, the Court should grant Defendants' Motion to Transfer this action to the District of Massachusetts.

Respectfully submitted,

DATED: January 18, 2022

*Of Counsel:*

Pedro Melendez-Arreaga
Lead Attorney-Advisor
Offshore Renewable Energy Team
Division of Mineral Resources
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Washington, D.C. 20240

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Perry M. Rosen*
PERRY M. ROSEN
D.C. Bar No. 374087
Senior Attorney
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 353-7792

21

(202) 513-7759
pedro.melendez-arrea@sol.doi.gov

Matthew J. Harris
Assistant District Counsel
U.S. Army Corps of Engineers
New England District
696 Virginia Road
Concord, MA 01742
 (978) 318-8244
matthew.j.harris@usace.army.mil

Lea Tyhach
Attorney - Advisor
National Oceanic and Atmospheric
Administration
Office of General Counsel, Northeast Section
55 Great Republic Drive
Gloucester, MA 01930
(978) 281-9242
lea.tyhach@noaa.gov

E-mail:  perry.rosen@usdoj.gov

MARK ARTHUR BROWN
D.C. Bar No. 470050
Senior Trial Attorney
Wildlife  and Marine Resources Section
P.O. Box 7611
Washington,  D.C. 20044-7611
Tel: (202) 305-0204
Fax: (202) 305-0275
E-mail:  mark.brown@usdoj.gov

LUTHER L. HAJEK
CO Bar 44303
Trial Attorney
Natural Resources Section
999 18th St., South Terrace, Suite  370
Denver, CO 80202
Tel: (303) 844-1376
Fax: (303) 844-1350
E-mail:  luke.hajek@usdoj.gov

*Attorneys for Federal Defendants*