<u>**ORAL HEARING REQUESTED**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEAFREEZE SHORESIDE, INC., et al.,
      *Plaintiffs*,

v.

THE UNITED STATES DEPARTMENT
OF THE INTERIOR, et al.,
      *Defendants.*

Civil Action No. 1:21-cv-03276-CRC

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF MASSACHUSETTS**</u>

THEODORE HADZI-ANTICH
tha@texaspolicy.com
ROBERT HENNEKE
rhenneke@texaspolicy.com
CONNOR MIGHELL
cmighell@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:    (512) 472-2700
Facsimile:    (512) 472-2728

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

ORAL HEARING REQUESTED ................................................................................ 3

FACTUAL BACKGROUND ...................................................................................... 3

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ............................................................................................................... 8

I.      The Federal Defendants' Issuance of the Vineyard Wind Lease and
        Approval of the COP in the District of Columbia Make This Court the Most
        Appropriate One to Hear This Case .............................................................. 8

II.     Private and Public Interest Consideration Do Not Support Transfer ................ 13

        A.      Private Factors 1 and 2: The Court Should Defer To Plaintiffs'
                Choice Of Forum ............................................................................ 14

        B.      Private Factor 3: The Claims Arose In The District Of Columbia ........ 16

        C.      Private Factor 4: D.C. Is No Less Convenient For The Parties Than
                Massachusetts ................................................................................. 17

        D.      Private Factor 5 and 6: Convenience Of The Witnesses And Ease Of
                Access To The Record Both Favor Venue In The District Of
                Columbia ........................................................................................ 19

        E.      Public Interest Factors 1 and 2: The D.C. District Is The Proper
                Court To Hear This Complex Case .................................................... 20

        F.      Public Interest Factor 3: This Case Is Not A Controversy Local to
                Massachusetts ................................................................................. 23

III.    The Cases Cited by the Federal Defendants In Their Transfer Motion Are
        Readily Distinguishable .............................................................................. 25

CONCLUSION ............................................................................................................ 28

CERTIFICATE OF SERVICE .................................................................................... 30

CERTIFICATE OF COMPLIANCE ........................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Ack Residents Against Turbines, et al. v. Bureau of Ocean Energy Mgmt.*,
   No. 1:21-CV-11390-IT (D. Mass) ................................................................ 21

*Alaska Wilderness League* v. Jewell,
   99 F. Supp. 3d 112 (D.D.C. 2015) ............................................................. 26

*Allco Renewable Energy Ltd. et al. v. Haaland*,
   No. 1:21-CV-11171-IT (D. Mass) ............................................................... 21

*Briggs v. Goodwin*,
   384 F. Supp. 1228 (D.D.C. 1974) (*aff'd*, 569 F.2d 10 (D.C. Cir. 1977) .......................... 14

*Citizen Advocs. For Responsible Expansion, Inc. (I-Care) v. Dole*,
   561 F. Supp. 1238 (D.D.C. 1983) ........................................................... 10, 27

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
   787 F. Supp. 2d 47 (D.D.C. 2011) ......................................................... 1, 3, 12

*Franz v. United States*,
   591 F. Supp. 374 (D.D.C. 1984) ................................................................ 11

*Friends of the Earth, et al. v. Debra A. Haaland, et al.*,
   2022 WL 185196 (January 20, 2022) ...................................... 7, 8, 16, 23, 25

*Gulf Restoration Network v. Jewell*,
   87 F. Supp. 3d 3030 (D.D.C. 2015) ........................................................... 27

*Intern. Brotherhood of Painters & Allied Trades Union v.*
   *Best Painting and Sandblasting Co., Inc.*,
   621 F. Supp. 906 (D.D.C. 1985) ............................................................... 16

*Lamont v. Haig*,
   590 F.2d 1124 (D.C. Cir. 1978) ................................................................ 11

*Mashpee Wampanoag Tribe v. Zinke*,
   18-cv-2242, 2019 WL 2569919 (D.D.C. 2019) ........................................... 17

*Nat'l Ass'n of Home Builders v. U.S. EPA*,
   675 F. Supp. 2d 173 (D.D.C. 2009) ........................................................... 17

*Nat'l Wildlife Fed'n v. Harvey*,
   437 F. Supp. 2d 42 (D.D.C. 2006) ............................................................. 27

*Oceana v. Bureau of Ocean Energy Mgmt.,*
   962 F. Supp. 2d 70 (D.D.C. 2013) ................................................................ 7

*Pain v. United Tech. Corp.,*
   637 F.2d 775 (D.C. Cir. 1980) .................................................................. 14

*Pres. Soc'y of Charleston v. U.S. Army Corps of Engineers,*
   893 F. Supp. 2d 49 (D.D.C. 2012) ............................................................ 27

*S. Utah Wilderness Alliance v. Norton,*
   2002 U.S. Dist. LEXIS 27414 (D.D.C. 2002) ............................................ 19

*Schmidt v. Am. Inst. of Physics,*
   322 F. Supp. 2d 28 (D.D.C. 2004) .............................................................. 7

*Shawnee Tribe v. United States,*
   298 F. Supp. 2d 21 (D.D.C. 2002) .............................................. 11, 12, 26

*Shawnee Tribe v. United States,*
   298 F. Supp. 2d 21 (D.D.C.) ...................................................................... 27

*\*Sierra Club v. Van Antwerp,*
   523 F. Supp. 2d 5 (D.D.C. 2007) ...................................................... 10, 11, 20

*Starnes v. McGuire,*
   512 F.2d 918 (D.C. Cir. 1974) .................................................................... 7

*Stewart Org., Inc. v. Ricoh Corp.,*
   487 U.S. 22 (1988) ........................................................................................ 1

*The Wilderness Society v. Babbitt,*
   104 F. Supp. 2d at 17 ................................................................................ 26

*Trout Unlimited v. United States Dep't of Agriculture,*
   944 F. Supp. 13 (D.D.C. 1996) ...................................... 7, 14, 17, 19, 26

*Valley Cmty. Pres. Comm'n v. Mineta,*
   231 F. Supp. 2d 23 (D. D.C. 2002) ...................................................... 25, 26

*\*Wilderness Soc'y v. Babbitt,*
   104 F. Supp. 2d 10 (D.D.C. 2000) ...................................................... 20, 26

**STATUTES**

16 U.S.C. § 1540(g)(3)(A) ......................................................................................... 10
28 U.S.C. § 1391(e)(1) ............................................................................................... 10
28 U.S.C. § 1404 .......................................................................................................... 7
28 U.S.C. § 1404(a) ...................................................................................................... 1
43 U.S.C. § 1332(1) .............................................................................................. 15, 24
43 U.S.C. § 1349(b)(1) .............................................................................................. 10

**OTHER AUTHORITIES**

*Executive Order on Tackling the Climate Crisis at Home and Abroad*, sec. 207, THE WHITE
    HOUSE (Jan. 27, 2021), https://www.whitehouse.gov/briefing-room/presidential-
    actions/2021/01/27/executive-ord er-on-tackling-the-climate-crisis-at-home
    -and-abroad/ ............................................................................................................ 4

*FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs*,
    THE WHITE HOUSE (Mar. 29, 2021), https://www.whitehouse.gov/briefing-
    room/statements- releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-
    offshore-wind-energy-projects- to-create-jobs/ ..................................................... 4

*FACT SHEET: Biden-Harris Administration Races to Deploy Clean Energy that Creates Jobs
    and Lowers Costs*, THE WHITE HOUSE (Jan. 12, 2022),
    https://www.whitehouse.gov/briefing-room/statements-releases/2022/01/12/fact-sheet-
    biden-harris-administration-races-to-deploy-clea n-energy-that-creates-jobs-and-lowers-
    costs/ ...................................................................................................................... 5

*Lease OCS-A-0501*, Bureau Of Ocean Energy Management (Apr. 1, 2015),
    https://www.boem.gov/sites/default/files/renewable-energy-program/State-
    Activities/MA/Lease-OCS-A-0501.pdf ................................................................. 6

*President Obama, Secretary Salazar Announce Framework for Renewable Energy Development
    on the U.S. Outer Continental Shelf*, BUREAU OF OCEAN ENERGY MANAGEMENT
    (Apr. 22, 2009), https://www.boem.gov/sites/default/files/boem-newsroom/Press-
    Releases/2009/press0422 .pdf ............................................................................... 3

*Record of Decision: Vineyard Wind 1 Offshore Wind Energy Project Construction and
    Operations Plan*, BUREAU OF OCEAN ENERGY MANAGEMENT (May 10, 2021),
    https://www.boem.gov/sites/default/files/documents/renewable-energy/state-
    activities/Final-Re cord-of-Decision-Vineyard-Wind-1.pdf................................ 6, 7, 9, 22

*Vineyard Wind 1 Offshore Wind Energy Project – Correction of Clerical Error and
    Clarification*, BUREAU OF OCEAN ENERGY MANAGEMENT (January 14, 2022),
    https://www.boem.gov/sites/ default/files/documents/renewable-energy/state-
    activities/USACE-ROD-Supplement.pdf ............................................................. 22, 23

Y. Qu, Impacts of Offshore Wind Energy on Seafood Sectors: A Macroeconomic Perspective of the Energy-Food Nexus (June 7, 2021) ............................................................................ 24

**REGULATIONS**

76 Fed. Reg. 28178 (May 16, 2011) ........................................................................ 3, 6
77 Fed. Reg. 5820 (Feb. 6, 2012) ........................................................................... 3, 6
79 Fed. Reg. 70545 (Nov. 26, 2014) ......................................................................... 6
86 Fed. Reg. 12495 (Mar. 3, 2021) ........................................................................... 5

## INTRODUCTION AND SUMMARY OF ARGUMENT

28 U.S.C. § 1404(a) grants a district court discretion to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice." The district court considering a motion to transfer must base its decision "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (cleaned up). The Federal Defendants bear the burden of showing that (1) the suit could have originally been brought in another district, and (2) "considerations of convenience and the interest of justice weigh in favor of transfer to that court." *Detroit Int'l Bridge Co. v. Gov't of Can.*, 787 F. Supp. 2d 47, 50 (D.D.C. 2011). There is a "presumption that Plaintiffs' forum choice should be left undisturbed [and] the movant ordinarily bears a heavy burden in opposing the . . . chosen forum." *Id.* at 52 (cleaned up).

The Federal Defendants fail to rebut the presumption and do not meet their heavy burden. They reside in the District of Columbia and their actions and omissions, which are the subjects of this lawsuit, occurred in the District of Columbia. Moreover, the approval of the Vineyard Wind project on the Outer Continental Shelf is the first effort by the Federal Defendants to effectuate their comprehensive, national program conceived, designed, and implemented in the District of Columbia for siting and approving multiple wind farms in federal waters on the Atlantic, Pacific, and Gulf coasts of the United States. To that end, all of the major decisions in connection with the approval of the Vineyard Wind project were directed, made, coordinated, and closely monitored by the Federal Defendants from their respective headquarters located in the District of Columbia. In an attempt to remove this case to a venue that the Federal Defendants apparently believe is more favorable for them, the motion to transfer fails to address the fundamental truth that this case does

1

not present an isolated instance involving only Massachusetts but, rather, is one of national scope and significance best resolved in the federal courts of the nation's capital.

If this Court finds venue is appropriate in Massachusetts as well as the District of Columbia, the multiple equitable factors the Court must balance when determining whether transfer is appropriate weigh soundly in favor of keeping the case in this district.  Transferring this case to the District of Massachusetts would not favor the public interest, judicial economy, convenience, or justice.  Not only do the Federal Defendants and their counsel reside in this district, but the administrative record was compiled in this district and is controlled by persons located here.  And, as indicated, all the decisions necessary to approve the Vineyard Wind project were initiated, made, and closely overseen by the Federal Defendants in this district.  If anything, moving this case to Massachusetts would make it harder, not easier, to adjudicate.

The existence of two prior cases addressing the Vineyard Wind project in Massachusetts does not mean that transfer is warranted.  The Massachusetts cases are in the embryonic stage and are related to this one simply because they concern the Vineyard Wind project.  But the Plaintiffs' challenge to the Federal Defendants' decisionmaking process is much broader than, and in many respects fundamentally differs from, the challenges brought by the plaintiffs in the two Massachusetts cases.

Significantly, under this district's venue transfer standard, the Plaintiffs need not prove any of the foregoing.  Rather, because the Plaintiffs' choice of venue in this district is permissible, it is the Federal Defendants who are required to overcome the strong presumption against transfer with a decisive showing that transfer to another district is substantially preferable to retaining the case in this Court.  In their motion to transfer, the Federal Defendants fall short of overcoming the

formidable presumption against transfer and fail to bear their "heavy burden in opposing  the . . . chosen forum." *Detroit Int'l Bridge Co.*, 787 F. Supp. 2d at 50.

## ORAL HEARING REQUESTED

Pursuant to Local Rule LCvR7(f), the Plaintiffs hereby request an oral hearing.

## FACTUAL BACKGROUND

In April 2009, President Obama and his Secretary of the Interior announced "a long-awaited framework for renewable energy production on the U.S. Outer Continental Shelf[,]" including "the siting and construction of off-shore wind farms . . . on the OCS." *President Obama, Secretary Salazar Announce Framework for Renewable Energy Development on the U.S. Outer Continental Shelf*, BUREAU OF OCEAN ENERGY MANAGEMENT (Apr. 22, 2009), https://www.boem.gov/sites/default/files/boem-newsroom/Press-Releases/2009/press0422.pdf.  For the convenience of the Court, a copy of that press release issued by the Department of the Interior from its offices in the District of Columbia is included as Exhibit A hereof.  As part of this effort, the Secretary of the Interior launched the "Smart From The Start" policy initiative and issued the Vineyard Wind lease under that initiative's corresponding regulatory framework, which was proposed and promulgated in the District of Columbia.  *See* 76 Fed. Reg. 28178 (May 16, 2011) (Smart From The Start regulations); 77 Fed. Reg. 5830 (Feb. 6, 2012) (notice of intent for Vineyard Wind lease).

The Vineyard Wind lease was among the first leases issued under the Smart From The Start policy.  In all relevant respects, the Smart From The Start policy and the issuance of the Vineyard Wind lease were conducted and directed from the headquarters of the Department of the Interior, located in the District of Columbia.  After issuance of the Vineyard Wind lease, the lease holder,

Vineyard Wind, LLC, began to work on its Construction and Operations Plan for approval by the Federal Defendants.

Years later, in January 2021, President Biden issued an executive order directing "[t]he Secretary of the Interior" to "review siting and permitting processes . . . in offshore waters" to determine how "to increase renewable energy production . . . in those waters, with the goal of doubling offshore wind by 2030 . . . ." *Executive Order on Tackling the Climate Crisis at Home and Abroad*, sec. 207, THE WHITE HOUSE (Jan. 27, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/27/executive-order-on-tackling-the-climate-crisis-at-home-and-abroad/. For the convenience of the Court, a copy of that executive order is included as Exhibit B hereof. The executive order required the Secretary of the Interior to "consult, as appropriate, with the heads of relevant agencies, including the Secretary of Defense, the Secretary of Agriculture, the Secretary of Commerce, through the Administrator of the National Oceanic and Atmospheric Administration, the Secretary of Energy, the Chair of the Council on Environmental Quality, State and Tribal authorities, project developers, and other interested parties." *Id.* All of these agencies and their heads reside in the District of Columbia.

Two months later, the Secretary of the Interior, along with four other agency heads and the National Climate Advisor, "announce[d] new leasing, funding, and goals that employ President Biden's whole-of-government approach" to "catalyze offshore wind energy." *FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs*, THE WHITE HOUSE (Mar. 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-offshore-wind-energy-projects-to-create-jobs/. For the convenience of the Court, a copy of the announcement is included as

Exhibit C hereof.  One such goal was to "deploy 30 gigawatts (GW) of offshore wind in the United States by 2030 . . . Achieving this target also will unlock a pathway to 110 GW by 2050 . . . ." *Id*.  To accomplish this goal, Interior's "Bureau of Ocean Energy Management . . . plans to advance new lease sales and complete review of at least 16 Construction and Operations Plans . . . by 2025 . . . ." *Id*.  This included the Vineyard Wind Construction and Operations Plan (the "COP").  *See* 86 Fed. Reg. 12495 (Mar. 3, 2021).

Both the issuance of the Vineyard Wind lease and the approval of the Vineyard Wind COP were an integral part of a top-down, large-scale effort to expedite offshore wind development, ordered by two Presidents and directed through foundational policy-and-rule-making from Washington, D.C. by federal agencies and their heads, all of whom reside in the District of Columbia.  This concerted, D.C.-directed whole-of-government effort continues to this day.  *See FACT SHEET: Biden-Harris Administration Races to Deploy Clean Energy that Creates Jobs and Lowers Costs*, THE WHITE HOUSE (Jan. 12, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/01/12/fact-sheet-biden-harris-administration-races-to-deploy-clean-energy-that-creates-jobs-and-lowers-costs/ ("A number of agencies are working together to drive the rapid build-up of offshore wind . . . .").  For the convenience of the Court, a copy of the fact sheet is included as Exhibit D hereof.

Thus, the Vineyard Wind Project is one of many offshore wind farms on the Outer Continental Shelf that was and is being planned, developed, coordinated, and approved by the Federal Defendants from the District of Columbia.  For example, since at least August 8, 2021, twenty-three such wind generating facilities were already sited on maps created by the Department of the Interior's Bureau of Ocean Energy Management ("BOEM") on the Outer Continental Shelf of the Atlantic Ocean.  *See* Exhibit E.  At least ten of those projects, including Vineyard Wind, are

clustered around the states of Rhode Island, New York, Massachusetts, and Connecticut.  *Id.*  As shown in Exhibit E, all the projects are located in federal waters.

The massive federal program goes well beyond the Atlantic Ocean.  A comprehensive view of BOEM's currently planned wind farms in federal waters off the coasts of the Atlantic, the Pacific, and the Gulf of Mexico is set forth in Exhibit F at 1-16.  The "Notes" to Exhibit F at 17-20 describe the history and current status of each of these planned projects in federal waters. BOEM Headquarters in Washington, D.C. is the driving force of siting and approving all of these wind projects.

The Vineyard Wind lease is among the first offshore wind leases on the Outer Continental Shelf issued under the "Smart From The Start" program commenced by the Interior Department in 2011 and reinvigorated in 2021.  *See* 76 Fed. Reg. 28178 (May 16, 2011) (amending BOEM regulations to implement "Smart From The Start" program); 77 Fed. Reg. 5820 (Feb. 6, 2012) (publishing call for information and nominations for Vineyard Wind lease issued under "Smart From The Start" regulatory framework).  Both the lease issuance and the approval of the COP for the Vineyard Wind project were initiated, directed, and completed in the District of Columbia, as evidenced by the fact that all of the relevant authorizing documents were issued and signed by multiple D.C.-area officials for D.C.-based agencies.  *See, e.g.* 79 Fed. Reg. 70545, 70554 (Nov. 26, 2014) (approving Final Sale Notice), *see also Lease OCS-A-0501*, Bureau Of Ocean Energy Management (Apr. 1, 2015), https://www.boem.gov/sites/default/files/renewable-energy-program/State-Activities/MA-Lease-OCS-A-0501.pdf at 7 (approving Vineyard Wind lease); *Record of Decision: Vineyard Wind 1 Offshore Wind Energy Project Construction and Operations Plan*, Bureau Of Ocean Energy Management (May 10, 2021),

https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Final-Record-of-Decision-Vineyard-Wind-1.pdf at 29, 48, 52 (approving the COP).

On December 15, 2021, the Plaintiffs, a collection of commercial fishermen and shoreside businesses who are injured by the Vineyard Wind lease issuance and COP approval, filed suit against the Federal Defendants in this Court for alleged violations of federal law committed in the District of Columbia.

## LEGAL STANDARD

"It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed." *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 78 (D.D.C. 2013) (denying motion to transfer). Therefore, 28 U.S.C. § 1404 only allows a district court to transfer a case "where maintenance of the action in the plaintiff's choice of forum will make litigation *oppressively* expensive, inconvenient, difficult, or harassing to defend." *Id.* at 73 (quoting *Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974) (en banc)) (emphasis added). The parties seeking transfer (in this case, the Federal Defendants) must first establish that venue is proper in the proposed transferee district. *See Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 31 (D.D.C. 2004). Then courts in this district balance several diverse factors when considering whether transfer would be in the interest of justice. *See Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996) (listing factors). If, and only if, the court finds both that venue is proper in the proposed district and that transfer would be just, the court may, but is not required to, exercise its discretion to transfer.

These long-standing transfer criteria were confirmed by this Court in the recent case of *Friends of the Earth, et al. v. Debra A. Haaland*, *et al.*, 2022 WL 185196 (January 20, 2022), in which the Court observed that the party seeking transfer not only "bears the burden of persuasion"

7

but also "must show decisively that transfer is proper." *Id at* *2 (cleaned up).  For the convenience of the Court, a copy of the *Friends of The Earth* decision is included as Exhibit H hereof.

## ARGUMENT

The Federal Defendants fail to meet their burden of persuasion because they fail to "show decisively that transfer is proper."  *Id*.

**I.    The Federal Defendants' Issuance of the Vineyard Wind Lease and Approval of the COP in the District of Columbia Make This Court the Most Appropriate One to Hear This Case**

To their credit, the Federal Defendants acknowledge the unavoidable fact that venue is proper in this district.  *See* Doc. No. 16-1 at 9 ("A plaintiff challenging orders or approvals issued by agencies of the United States government may file their challenge . . . in any district where the agencies are present, which generally includes the United States District Court for the District of Columbia.").  But they conveniently fail to note that the Vineyard Wind project is not sited in Massachusetts state waters, but in the Outer Continental Shelf, which constitute federal lands and waters that the federal government oversees, regulates, and administers.  *See* Exhibit E.

Furthermore, the Federal Defendants fail to acknowledge that the Vineyard Wind project is the first of many planned wind farm projects that will be sited off the Atlantic Coast and that the Federal Defendants do not plan to stop there but will go on to site and approve wind farms in federal waters along the Pacific and Gulf coasts.  *See* Exhibit F.  As indicated *supra*, all these wind projects are being driven by BOEM and the other Federal Defendants from their respective headquarters located in the District of Columbia pursuant to executive orders issued and regulations promulgated in the District of Columbia.  Moreover, the instant lawsuit challenges the very first approval of any construction and operations plan for a wind farm on the Outer Continental Shelf pursuant to those orders and regulations.  It defies credulity to argue that the

national headquarters of the Federal Defendants would not be at the helm of every decision made in connection with this first of many similar projects or that this Court should not be the one deciding whether these Federal Defendants violated federal law in approving this project.

For example, the Record of Decision (the "ROD") approving the Vineyard Wind Construction and Operations Plan was signed by two federal officials in the District of Columbia: (1) Laura Daniel-Davis, Principle Deputy Assistant Secretary, Land and Minerals Management, Department of the Interior, and (2) Catherin Marzin, Acting Director National Marine Fisheries Service Office of Protected Resources. *Record of Decision: Vineyard Wind 1 Offshore Wind Energy Project Construction and Operations Plan*, Bureau Of Ocean Energy Management (May 10, 2021), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Final-Record-of-Decision-Vineyard-Wind-1.pdf at 29, 52.  Although the ROD was also signed by Colonel John A, Atilano II, District Engineer of the New England District of the United States Army Corps of Engineers, whose office is in Concord, Massachusetts, upon information and belief, Colonel Atilano serves under the direction and control of the Corps' Chief of Engineers, whose office is in the District of Columbia and, ultimately, the Secretary of the Department of Defense, whose office is also in this district.

It is also noteworthy that the final letter authorizing the Construction and Operations Plan to proceed was issued on July 15, 2021, by James F. Bennet, Program Manager, Office of Renewable Energy Programs, Bureau of Ocean Energy Management, United States Department of the Interior, on letterhead of the Department of the Interior, which was the lead agency in connection with both the lease issuance and COP approval for the Vineyard Wind Project and the headquarters of which is located in the District of Columbia.  *See* Complaint, Doc No. 1, Exhibit D at 2 of 117.

9

Citing *Citizen Advocs. for Responsible Expansion*, *Inc. (I-Care) v. Dole*, 561 F. Supp. 1238, 1240 (D.D.C. 1983), the Federal Defendants argue that "justice requires that . . . localized controversies should be decided at home." But they conveniently neglect these facts: All the Federal Defendants are at home in the District of Columbia, they made decisions regarding the Vineyard Wind project in the District of Columbia, the Vineyard Wind COP approval is the first of many such approvals to be made in the District of Columbia by these same Federal Defendants, and the locus of the administrative record is in this district.

In actions where a defendant is "an officer or employee of the United States," venue is proper in "any judicial district in which a defendant in the action resides, a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1) (cleaned up). Although the Federal Defendants mention in their motion that ESA citizen suits "may be brought in the judicial district in which the violation occurs," 16 U.S.C. § 1540(g)(3)(A), they conveniently downplay the fact that the violations alleged here are actions and omissions that *occurred* in the District of Columbia. In addition, OCSLA's venue provision, which states that a challenge to agency activities under that statute "may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose." 43 U.S.C. § 1349(b)(1). Here, not only do the Federal Defendants reside in this district but their impermissible actions or omissions "arose" in this district by virtue of the fact that those actions or omissions took place here.

Significantly, in *Sierra Club v. Van Antwerp*, this Court refused to transfer venue in an action against government defendants involving the ESA and the Clean Water Act because the Court concluded that the dispute was national in scope. *See Sierra Club v. Van Antwerp*, 523 F.

10

Supp. 2d 5 (D.D.C. 2007) (denying motion to transfer).  The Court noted that Congress specifically

indicated that the ESA was designed to protect the "national value of endangered species," and

held as follows:

> Based on both Congress' express declarations of the national character of
> the statutes at issue in this case and the fact that the issue here is whether
> federal agencies complied with federal law, the Court is unable to say that
> the localized Florida impact of this suit sufficiently weighs in favor of
> transfer absent other factors that would contribute toward undermining the
> Court's "great deference" for the plaintiffs' chosen forum.

*Id.* at 13-14.  Just as in *Van Antwerp,* here many of the claims at issue arise from actions or

omissions of the Federal Defendants committed under the ESA and the Clean Water Act in this

district and, for the same reasons, these claims should not be transferred.

Furthermore, because "[t]he residence of an official defendant is determined on the basis

of the official residence of the federal officer or agency," all Federal Defendants reside in the

District of Columbia.  *Franz v. United States*, 591 F. Supp. 374, 377 (D.D.C. 1984) (citing *Lamont*

*v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978)).  Moreover, as the complaint states (and the

Federal Defendants' motion affirms), the subject of this suit is the Federal Defendants' violation

of "the Outer Continental Shelf Lands Act, the Endangered Species Act, the Clean Water Act, the

Marine Mammal Protection Act, the National Environmental Policy Act, and their respective rules

and regulations . . . in connection with the *issuance* of Lease OCS-A-0501 and the *approval* of the

[Vineyard Wind] Construction and Operations Plan . . . ."  *See* Doc. No. 1 at 4 (emphasis added);

*see also* Doc. No. 16-1 at 9 ("Plaintiffs challenge the Agencies' *approvals* of various aspects of a

wind turbine energy project . . . .") (emphasis added).  It is the issuance of the lease and the approval

of the COP that are at the heart of the issues raised in this case, and both the lease issuance and

COP approval occurred in the District of Columbia.  *See Shawnee Tribe v. United States*, 298 F.

Supp. 2d 21, 25 (D.D.C. 2002) (finding that the substantial focus of "the decisionmaking process" for federal agency action determines claim origin).

As indicated *supra,* the Federal Defendants' decision to issue the Vineyard Wind lease and approve the Vineyard Wind project is not some isolated action.  It is part of a comprehensive effort by the Federal Defendants to implement executive orders and rulemakings requiring the Federal Defendants to site and approve dozens of wind turbine projects in federal waters along the Atlantic, Pacific, and Gulf coasts.  *See* Exhibits A – F.  The Plaintiffs have alleged that, to accomplish that goal, the Federal Defendants began offering offshore wind leases and approving wind farm projects with the goal of bringing them to fruition regardless of the consequences, thereby engaging in insufficient review and rubber-stamping as much wind development as they could under their "Smart From The Start" policy.  *See* Doc. No. 1 at 38–42 and 74–75.

The Federal Defendants' D.C.-centric decsionmaking leading to the issuance of the Vineyard Wind lease and the approval of the Construction and Operations Plan shows that the cards were stacked in the District of Columbia in favor of lease issuance and COP approval. Plaintiffs' complaint alleges that the unintelligent pursuant of lease issuance and COP approval by the Federal Defendants operating in the District of Columbia were motivated by achieving the success of the Vineyard Wind project regardless of the cost, consequences, or illegalities. Accordingly, it is the Federal Defendants' bad behavior in the District of Columbia that is the subject of this suit's claims – not the locus of the Vineyard Wind project.  That bad behavior makes this district not only the best venue for this case but arguably the only proper venue under the circumstances.  Therefore, the Federal Defendants have failed to meet their high burden that the case should be transferred to District of Massachusetts.  *See Detroit Int'l*, 787 F. Supp. 2d 47, 50 (D.D.C. 2011) (refusing to transfer venue to the Eastern District of Michigan because the

defendants failed to meet their substantial burden of showing that transfer was appropriate). Here, the Federal Defendants state in conclusory fashion in their motion that "much of the agency work" involved in the challenged agency actions occurred in Massachusetts or "outside of the District of Columbia." Doc. 16-1 at 17. The Federal Defendants provide little, if any, documentation to prove this assertion and thus fail to meet their burden.

The Federal Defendants believe that it somehow makes a difference when determining venue that the Vineyard Wind project itself is located "off the coast of Massachusetts." *See* Doc. No. 16-1 at 17—18. But again, Plaintiffs' suit takes issue with the *decisionmaking* undertaken by the Federal Defendants in issuing the lease and approving the Construction and Operations Plan. The Federal Defendants simply assert but never come close to demonstrating that Massachusetts is the "locus of all of [the Federal Defendants'] actions" that are the subject of this suit's claims. *Id.* In short, the Federal Defendants' bad behavior is the but-for cause of Plaintiffs' injury and the subject of this suit's claims. That bad behavior had its provenance in and was executed by actors in the District of Columbia and not in Massachusetts.

## II.   Private and Public Interest Considerations Do Not Support Transfer

Courts in this district consider several private and public factors when determining whether transfer is in the interest of justice, including:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Trout Unlimited*, 944 F. Supp. 13, 16 (D. D.C. 1996).  As the Federal Defendants did in their motion to transfer, the Plaintiffs will consider the factors in turn.

### A. <u>Private Factors 1 and 2: The Court Should Defer To Plaintiffs' Choice Of Forum</u>

"It is well established law that a plaintiff's choice of venue is given preference and the burden of establishing that an action should be transferred is on the moving party."  *Briggs v. Goodwin*, 384 F. Supp. 1228 (D.D.C. 1974) (*aff'd*, 569 F.2d 10 (D.C. Cir. 1977)).  In fact, the D.C. Circuit has instructed lower courts not to transfer cases "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff."  *Pain v. United Tech. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980).  Plaintiffs chose the District of Columbia as this suit's forum.  The Federal Defendants admit that venue is proper in this district. Doc. No. 16-1 at 9.  But the Federal Defendants then cherry-pick phrases from certain decisions to contra-factually propose that Plaintiffs' choice of forum is not entitled to deference, arguing that the District of Columbia "has no factual nexus to the case," that Plaintiffs have "substantial ties" to Massachusetts, and that "the subject matter of the lawsuit is connected" to Massachusetts. *Trout Unlimited*, 944 F. Supp. at 17.[1]  In making these assertions, the Federal Defendants mischaracterize both the facts and the law.

First of all, the Federal Defendants must affirmatively show that Plaintiffs' chosen forum lacks sufficient factual connection to Plaintiffs' claims.  The best they can do is to state without citation that "the Plaintiffs, the Project they challenge, and the alleged injuries from that Project, have substantial ties to the District of Massachusetts and no contacts to the District of Columbia." Doc. No. 16-1 at 19.  As shown above, that is palpably untrue.  Plaintiffs are challenging the

---

[1]     The Federal Defendants mistakenly attribute this quote to a different case in their motion. *See* Doc. No. 16-1 at 19.

Federal Defendants' decisions to issue the Vineyard Wind lease and to approve the Vineyard Wind COP in an arbitrary, capricious, and otherwise unlawful manner.  For the reasons set forth *supra,* it beggars belief to claim that ultimate decisions related to the Administration's very first effort to implement its comprehensive plan to populate the Outer Continental Shelf of the United States with wind farms would not be directed from, approved, and made by federal agencies from their headquarters located in the District of Columbia.

The Federal Defendants next argue that justice favors transfer to Massachusetts because (1) the Vineyard Wind project is "located in Massachusetts and/or directly off its coast" and (2) any alleged harms will occur in Massachusetts.  Doc. No. 16-1 at 20.  Those allegations are also untrue.  The Vineyard Wind project's wind turbines and undersea infrastructure are not "located in and/or directly off the coast of Massachusetts," but are located on the Outer Continental Shelf on federally-controlled land in an area many miles away from Massachusetts, Rhode Island, Connecticut, and New York, as depicted in Exhibit E.  *See* 43 U.S.C. § 1332(1) ("[T]he subsoil and seabed of the Outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition . . . .").

Thus, in this lawsuit Plaintiffs allege that the D.C.-residing Federal Defendants harmed them by their decision to lease and approve the Vineyard Wind project on federal land located many miles of the coast of any state.  Rather than being Massachusetts-centric, this case most directly involves actions and omissions of the federal government and its agencies, all of which reside in the District of Columbia.

The Federal Defendants say, "Plaintiffs reside and do business in Massachusetts, Rhode Island, and New York." Doc. No. 16-1 at 20.  That much is true, but the Federal Defendants neglect to note that this suit has few substantive ties to Massachusetts aside from the residence of *a single*

*plaintiff.* Five of the six plaintiffs reside in Rhode Island and/or New York. Accordingly, based on the Federal Defendants' own standard, venue could be viewed as more proper in those states. Among other reasons, *because* Plaintiffs reside in a variety of locations but the Federal Defendants are at home in the District of Columbia, this district is the best venue in which to adjudicate this case.

The Court should, as usual, defer to Plaintiffs' choice of venue because the Federal Defendants have not provided good reason to deviate from this time-honored practice. *See Intern. Brotherhood of Painters & Allied Trades Union v. Best Painting and Sandblasting Co., Inc.*, 621 F. Supp. 906, 907 (D.D.C. 1985) (denying transfer and opining that plaintiff's forum choice "is due substantial deference and, unless the balance of convenience is strongly in favor of the defendants, should *rarely* be disturbed") (emphasis added); *See Friends of the Earth, et al. v. Debra A. Haaland, et al.*, 2022 WL 185196 *at* *2 (January 20, 2022), confirming that the party seeking transfer not only "bears the burden of persuasion" but also "must show decisively that transfer is proper." (cleaned up) *See* Exhibit H.

### B.    Private Factor 3: The Claims Arose In The District Of Columbia

The Federal Defendants argue by quoting from Plaintiffs' complaint that because Plaintiffs often mention that the Vineyard Wind project "is located" in Massachusetts, the Plaintiffs' claims arose in Massachusetts, so venue is most proper there. *See* Doc. No. 16-1 at 21–22. As Plaintiffs explained *supra,* the turbines and undersea infrastructure that comprise the bulk of the Vineyard Wind project will not be located in Massachusetts, but in federally-controlled waters. It is the *decisions* regarding those waters that were made by the Federal Defendants, all of whom reside in D.C., that directly caused Plaintiffs' injury. The Defendants do not show that those decisions were made anywhere but in the District of Columbia. Thus, the claims making up this suit *arose* in the

District of Columbia. "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Nat'l Ass'n of Home Builders v. U.S. EPA,* 675 F. Supp. 2d 173, 179-80 (D.D.C. 2009) (denying motion to transfer); *accord Mashpee Wampanoag Tribe v. Zinke,* No. 18-cv-2242, 2019 WL 2569919 at *7 (D.D.C. 2019)

## C.    Private Factor 4: D.C. Is No Less Convenient For The Parties Than Massachusetts

The Federal Defendants argue that "[t]o the extent that there are hearings before the [c]ourt, there is no basis to conclude that Massachusetts is less convenient than the District of Columbia." Doc. No. 16-1 at 23.  However, that is not what the Federal Defendants must prove, because, as previously established, courts normally defer to the plaintiff's choice in venue "unless the balance of convenience is strongly in favor of the defendants." *Trout Unlimited*, 944 F. Supp. at 16.  The Federal Defendants do not even attempt to show that convenience strongly favors Massachusetts. For example, Massachusetts is less convenient distance-wise for the Federal Defendants and their legal team, and it is odd that counsel for the Federal Defendants seem so determined to flee their home district to practice law in another jurisdiction.

It is noteworthy that lead counsel for the Federal Defendants in the instant case is also lead counsel in the two pending cases in the District of Massachusetts.  Perhaps government counsel does not wish to be burdened by litigating the cases in two different courts.  But that is not a valid reason to transfer the case.  To the extent that convenience of parties' counsel is at all relevant, Plaintiffs' counsel can readily travel to D.C. by air for any necessary hearings, and Massachusetts would not be any more convenient in that regard.

Significantly, the Supplement to the Corps of Engineers Record of Decision (the "Supplemental ROD"), dated January 14, 2022, may require depositions of Federal Defendants in

the District of Columbia to determine the actual provenance of a recent major and unexpected

change to the Final ROD, as stated on page 2 of the Supplemental ROD:

> 3.      Clarification
>
> On page 39, lines 31-33, within the Economics section of the General Public
> Interest Review, the JROD reads, "While Vineyard Wind is not authorized
> to prevent free access to the entire wind development area, due to the
> placement of the turbines it is likely that the entire 75,614-acre area will be
> abandoned by commercial fisheries due to difficulties with navigation."
> This statement regarding the likelihood of abandonment of the area by
> commercial fisheries is based solely upon comments of interested parties
> submitted to BOEM during the public comment period for the draft
> environmental impact statement as summarized in Appendix K to the Final
> Environmental Impact Statement (FEIS).  The statement is not based upon
> any separate or independent USACE or other agency evaluation or study,
> and accordingly does not represent the position of the USACE regarding the
> status of commercial fisheries due to difficulties of navigation that may or
> may not result from the placement of the turbines.  Accordingly, for the sake
> of clarity, page 39, lines 31-33, of the JROD are changed to read, "While
> Vineyard Wind is not authorized to prevent free access to the entire wind
> development area, according to comments submitted by interested parties
> to BOEM as summarized in Appendix K to the FEIS, due to the placement
> of the turbines, it is likely that the entire 75,614-acre area will be abandoned
> by commercial fisheries due to difficulties with navigation."

For the convenience of the Court, the Supplemental ROD is included as Exhibit G hereof.  It is

curious that the above language in the Supplemental ROD was issued long after the ROD was

finalized and only a month after the complaint in the instant case was filed.  The complaint filed

by the Plaintiffs prominently featured the language in the original ROD stating that "due to the

placement of the turbines it is likely that the entire 75,614-acre area will be abandoned by

commercial fisheries due to the difficulties with navigation."  *See* Complaint Doc. No. 1 at 1-2.

The convenient change in language proffered in the Supplemental ROD raises questions about its

propriety and origin that merit full explanation by those who are responsible for the change. Such

explanation will likely require depositions in the District of Columbia.

In sum, Massachusetts is certainly not a great degree more convenient for the parties. Accordingly, because the Federal Defendants have not met their burden, the Court should defer to Plaintiffs' choice of venue on this issue.

**D.** **Private Factors 5 and 6: Convenience Of The Witnesses And Ease Of Access To The Record Both Favor Venue In The District Of Columbia**

The Federal Defendants dismiss the final two private-interest factors, calling them "effectively nullified" because the case will be "decided on the administrative record." Doc. No. 16-1 at 24. Although these factors may be somewhat less relevant in cases involving "judicial review of an administrative decision . . . .," *Trout Unlimited*, 944 F. Supp. at 18, that does not mean these factors lack any relevance at all in the instant case. As indicated, in light of the content of the Supplemental ROD, the Plaintiffs are likely to request discovery, including depositions on the record in connection with controversies regarding the content of the administrative record. As the Federal Defendants reside in D.C., this factor favors maintaining venue in this district. *See S. Utah Wilderness Alliance v. Norton*, 2002 U.S. Dist. LEXIS 27414 at *4 (D.D.C. 2002) (considering the location of "any relevant witnesses regarding the agency's decision and actions" when analyzing if venue is proper in an administrative record review case).

In addition, the Federal Defendants acknowledge that they possess the entire administrative record relevant to this case. *See* Doc. No. 16-1 at 23–24. Plaintiffs expect the record in this matter to be "voluminous," especially if the Federal Defendants exercised anything approaching sufficient regulatory process when issuing and approving Vineyard Wind's lease and COP, respectively, including but not limited to compliance with the numerous requirements of the National Environmental Policy Act. *Trout Unlimited*, 944 F. Supp. at 18 (considering the large size of an administrative record relevant for determining venue). "[W]hen the administrative record is the only source of proof that will be seen by the Court, it is appropriate to consider its

19

location." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 15 (D.D.C. 2000).  This applies even when the administrative record is proffered electronically where, as here, there will likely be significant issues arising regarding the actual content of that record. This factor also weighs in favor of maintaining venue in the District of Columbia.

     **E.**    **Public Interest Factors 1 and 2: The D.C. District Is The Proper Court To Hear This Complex Case**

As an initial matter, Plaintiffs agree with the Federal Defendants that neither D.C. nor Massachusetts appear to have particularly congested court dockets, so Public Factor 2 appears to favor neither party's choice of forum.  Doc. No. 16-1 at 25–26.  But as for Public Factor 1, Plaintiffs prefer that this case remain in the District of Columbia due to, among other things, its judges' increased experience in deciding complex administrative law matters.  The instant case is a complicated, high-level lawsuit of first impression containing, as the Federal Defendants note, "347 numbered paragraphs and . . . 33 separate counts . . . ."  Doc. No. 16-1 at 13.  And it involves five distinct and complex federal statutes: the Outer Continental Shelf Lands Act, the Endangered Species Act, the Clean Water Act, the Marine Mammal Protection Act, and the National Environmental Policy Act, and their respective rules and regulations . . . in connection with the issuance of Lease OCS-A-0501 and the approval of the [Vineyard Wind] Construction and Operations Plan . . . ."  *See* Doc. No. 1 at 4; *see also* Doc. No. 16-1 at 9 ("Plaintiffs challenge the Agencies' approvals of various aspects of a wind turbine energy project . . . ."). The experience of this court, which regularly deals with agency federal law violations that are national in scope, such as those alleged in the instant case, would be highly beneficial to the just resolution of the complex issues in this litigation.  *See Van Antwerp*, 523 F. Supp. 2d at 13 (refusing to transfer case involving Clean Water Act and ESA alleged violations because of the "national scope" of the Clean Water Act and the "national value" of endangered species protected by the ESA). To reiterate, this is not

a run-of-the mill case involving a single violation of a single federal law affecting a single state or federal district.

According to the Federal Defendants, "the pendency of challenges to the same agency actions" supports transfer to the District of Massachusetts.  Doc. No. 16-1 at 25.  The Federal Defendants point out that two cases involving the Vineyard Wind project are currently pending in the District of Massachusetts.  *See Ack Residents Against Turbines, et al. v. Bureau of Ocean Energy Mgmt.*, No. 1:21-CV-11390-IT (D. Mass) ("*Ack Residents*"); *Allco Renewable Energy Ltd. et al. v. Haaland*, No. 1:21-CV-11171-IT (D. Mass) ("*Allco*").  But the Federal Defendants conveniently fail to advise this Court that those cases are still in the very early stages of litigation.  The Federal Defendants have not filed an answer in either Massachusetts case, while in both of the Massachusetts cases and in the instant case the developer of the Vineyard Wind project has been granted leave to intervene.  Accordingly, at this point in the proceedings, the district court in Massachusetts is no more familiar with the facts or issues relevant to the Plaintiffs' suit than is this Court.

In addition, while the Massachusetts cases may be similar to each other, there are more than mere "differences in the wording of some of the claims and counts" between those cases and this one.  Doc. No. 16-1 at 15.  *Allco's* lead plaintiff owns, operates, and develops "various solar electric generating facilities."  *Allco*, Doc. No. 1 at 5.  None of the *Allco* plaintiffs are directly affected by the harm the Federal Defendants' issuance of the Vineyard Wind lease and approval of the Vineyard Wind project will do to *commercial fishing*, because none of the *Allco* plaintiffs are involved in that industry.  The *Allco* plaintiffs are protecting their solar energy businesses from preference provided by the Federal Defendants to other renewable energy competitors, such as wind farms.  And while the instant case shares some common facts and claims with the *Allco*

lawsuit, this is less the result of common injury and more due to examination of the same administrative record.

Plaintiffs' injuries in this case also differ substantially from those of plaintiffs in the *Ack Residents* case. *Ack Residents* is far more limited in the claims it makes than this suit, and any common claims are once again the result of a shared administrative record. For example, the *Ack Residents* plaintiffs do not claim that the Federal Defendants' actions harm commercial fishermen or shoreside businesses, but instead they argue that they are harmed because their ecosystem is placed at risk by threats posed by the Vineyard Wind turbines. *Ack Residents*, Doc. No. 1 at 6–8. Plaintiffs in the instant lawsuit are fishermen who live their lives and make their livelihoods on and from the ocean. Accordingly, although they share some of those ecosystem injuries, they will be victimized in a far more impactful, pecuniary manner if the Federal Defendants' bad behavior is allowed to stand. The shoreside businesses and commercial fishermen represented in the instant suit will lose their livelihoods, as the Record of Decision acknowledges. *See Record of Decision: Vineyard Wind 1 Offshore Wind Energy Project Construction and Operations Plan*, BUREAU OF OCEAN ENERGY MANAGEMENT (May 10, 2021), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Final-Record-of-Decision-Vineyard-Wind-1.pdf at 39 ("While Vineyard Wind is not authorized to prevent free access to the entire wind development area, due to the placement of the turbines it is likely that the *entire* 75,614 acre area will be *abandoned* by commercial fisheries due to difficulties with navigation.") (emphasis added).[2]

---

[2]    As indicated *supra*, Plaintiffs are well aware that a recent supplement to the ROD states that when the Federal Defendants said that the Vineyard Wind project will result in the complete abandonment of commercial fishing in the lease area, they *really* meant that *the comments* received to the Draft Environmental Impact Statement made that claim. *See Vineyard Wind 1 Offshore Wind Energy Project – Correction of Clerical Error and Clarification*, BUREAU OF OCEAN

And, upon information and belief, Plaintiffs understand that another challenge to the Vineyard Wind project will be filed in this district within the next few days, and it may be appropriate to defer decision on the transfer motion until the Court and the parties have had the opportunity to review that anticipated complaint.

Significantly, in a case decided by this Court two weeks ago, the Court observed that "the mere existence of related litigation in another district" does not compel, require, or even strongly suggest that transfer is appropriate. *See Friends of The Earth,* 2022 WL 185196 at *2-3 (holding that transfer was not appropriate).  So too here, the mere fact that there are two related cases in the District of Massachusetts does not suggest, much less compel, transfer to that jurisdiction.  For the convenience of the Court, a copy of the *Friends of The Earth* decision is included as Exhibit H hereof.

In summary, the first two public factors tend to weigh in Plaintiffs' favor.

F.      **Public Interest Factor 3: This Case Is Not A Controversy Local To Massachusetts**

Once again, the Federal Defendants state that Massachusetts is the "home venue" for Plaintiffs' claims, so this case should be transferred there.  And once again, as Plaintiffs have explained above, the Federal Defendants are wrong.  The Plaintiffs' complaint concerns the Federal Defendants' decisionmaking, without which they would not have suffered injury.  The Federal Defendants provide no evidence that their decisions were not ultimately made in the District of Columbia.  Accordingly, they do not carry their heavy burden on this issue.

---

ENERGY        MANAGEMENT        (January        14,        2022),        https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/USACE-ROD-Supplement.pdf    at    2. This explanation is suspect on its face, but it also requires the Court to accept that the Federal Defendants did not make this so-called "clarification" for over seven months, and just happened to find it necessary when Plaintiffs filed their lawsuit.  As indicated, depositions of relevant federal actors involved in this change may be required in the District of Columbia.

Also, Vineyard Wind's turbines and connected infrastructure under the sea, the portion of the physical project approved by the Federal Defendants that injures Plaintiffs, are not located in Massachusetts.  The site of that injurious equipment is the Outer Continental Shelf, which is under federal jurisdiction and control.  *See* 43 U.S.C. § 1332(1).  In their motion to transfer, the Federal Defendants neglect that obvious distinction.  Furthermore, Plaintiffs are unconcerned with Vineyard Wind infrastructure that will be built *in* Massachusetts because they do not fish on land. That is why they have not yet filed a motion for preliminary injunction against the on-land construction, which, upon information and belief, has already commenced.

Finally, this action will not "have its most profound impact" on the residents of Massachusetts.  *See* Doc. No. 16-1 at 27.  To the contrary, Plaintiffs are from three different states because commercial fishermen from throughout New England and nearby states use the fishing ground the Federal Defendants have put at risk by approving the Vineyard Wind COP.  Moreover, as the Plaintiffs allege in their complaint, the Federal Defendants' decisions about this and other offshore wind projects related to the Administration's overall policy aims will be disastrous for the entire nation's food supply, depriving America of large quantities of seafood and leading to further increases in food prices.  *See* Doc. No. 1 at 37, 64 (faulting Federal Defendants for failing to analyze adverse effects of Vineyard Wind on food supply); *see also generally* Y. Qu, Impacts of Offshore Wind Energy on Seafood Sectors: A Macroeconomic Perspective of the Energy-Food Nexus (June 7, 2021) (Ph.D. dissertation, University of Exeter) (on file with Open Research Exeter) (stating in abstract that research "shows that massive expansion of [offshore wind farms] results in . . . significant negative impacts on seafood supply as marine resource is taken away from fisheries . . . ."). Vineyard Wind and the other wind energy projects located throughout the Outer Continental Shelf will therefore impact far more people than the residents of Massachusetts.

As demonstrated above, every single private and public factor lies squarely in favor of this case remaining in the D.C. District.  The Federal Defendants do not carry their heavy burden to show that transfer to the District of Massachusetts is warranted by either private concern or public interest.  Accordingly, this Court should conclude that transfer would not be in the interest of justice.

**III.  The Cases Cited by the Federal Defendants In Their Transfer Motion Are Readily Distinguishable**

The Federal Defendants rely substantially on *Valley Cmty. Pres. Comm'n v. Mineta,* 231 F. Supp. 2d 23 (D. D.C. 2002), citing the case for multiple propositions in their motion.  *See* Doc. No 16-1 at 16, 18, 19, 24, and 28.  *Mineta* expressly and approvingly cites *Trout Unlimited* for the proposition that a plaintiff's choice of forum should be honored "unless the balance of convenience is *strongly* in favor of the defendants."  *See* 231 F. Supp. at 44 (emphasis added). Accordingly, it is disingenuous of the Federal Defendants to claim in their brief that "plaintiff's choice of forum is generally entitled to *some* deference."  *See* Doc. No. 16-1 at 19, citing *Mineta* (emphasis added). To the contrary, *Mineta* recognizes the strong preference accorded to plaintiff's choice of venue.

The Federal Defendants also cite *Mineta* for the proposition that Massachusetts is a better venue because Massachusetts residents who live in the area will be profoundly impacted.  *See* Doc. No. 16-1 at 27.  But that assertion is misleading at best.  Only one of the affected Plaintiffs, XIII Northeast Fishery Sector, Inc., resides in Massachusetts, while the other five reside either in New York or Rhode Island.  Collectively, the Plaintiffs have chosen this district as their preferred venue for the reasons set forth herein, and the Federal Defendants have not met their burden that the balance of convenience is "strongly" in their favor.  *Mineta*, 231 F. Supp. at 44.  *See also Friends of the Earth*, 2022 WL 185196 at *5 (denying transfer because "impacts alone cannot create proper venue.").

In addition, the Federal Defendants cite *Mineta* for the proposition that Massachusetts contains the administrative record, but that assertion is false because, in *Mineta,* the voluminous record was located in New Mexico and not in this district.  *See Mineta*, 231 F. Supp. 2d at 45. Here, the opposite is true.  The administrative record, which was directed, compiled, and marshalled by the Interior Department's Bureau of Ocean Energy Management, is located in the District of Columbia.  Significantly, even in a case where the administrative record was located in Alaska, this Court refused to transfer venue to the District of Alaska because the plaintiffs' choice of forum in this district was entitled to substantial deference and the controversy was of national significance.  *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000).

The Federal Defendants also rely substantially on *Trout Unlimited v. United States Dep't of Agriculture,* 944 F. Supp. 13, 18 (D.D.C. 1996), citing the case on pages 18, 26 and 27 of their brief at Doc. 16-1.  But, unlike here, *Trout Unlimited* involved issues of Colorado water and property law in which the Forest Service granted a private company an easement best decided by a local court, and, also unlike here, there were no issues of national significance or involving a treasured national resource.  *Id.* at 18.  *See also, The Wilderness Society v. Babbitt*, 104 F. Supp. 2d at 17 (discussing *Trout Unlimited*).

Other cases cited by the Federal Defendants throughout their brief are also distinguishable. For example, *Alaska Wilderness League* v. Jewell, 99 F. Supp. 3d 112, 117 (D.D.C. 2015) only tangentially involved the District of Columbia because, although that the case touches upon "some national concerns" it does not address the first instance of a comprehensive program that will affect the Outer Continental Shelf of the entire United States, implicating the nation as a whole.  Here, in a case dealing with the first challenged construction and operation plan that was approved under the federal government's umbrella Smart From The Start Program, the proposed consequences of

the instant action will likely reverberate throughout the entire national program to site and approve wind farms on all marine coats of the United States and, consequently, will affect the nation as a whole.

The Federal Defendants also relied heavily on *Pres. Soc'y of Charleston v. U.S. Army Corps of Engineers*, 893 F. Supp. 2d 49, 58 (D.D.C. 2012), citing it on Doc. 16-1 pages 18, 24, 26, 27, and 28 of the motion, conveniently omitting the stark contrast between that case involving a single locality and the instant one, which is of national scope and interest. *Charleston* was about a single agency action involving the Corps of Engineers' approval of construction of additional pilings underneath the Union Pier Terminal in Charleston, South Carolina, to provide support to elevators and escalators in connection with a building restoration project.  That case did not have any significance beyond the specific location of the relevant terminal.  By contrast, the instant case is one of national scope and significance because it is the first approval of a construction and operations plan pursuant to BOEM's comprehensive, nationwide Smart From The Start program that will affect all of the nation's marine waters.

*Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 26 (D.D.C.) and *Gulf Restoration Network v. Jewell,* 87 F. Supp. 3d 3030, 316 (D.D.C. 2015), also cited by the Federal Defendants, are distinguishable from the instant case because again, unlike here, those cases, again, involved truly localized controversies applicable to only one federal district.  *See* Doc. No. 16-1 at 27-28. Further, *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42 (D.D.C. 2006), also cited by the Federal Defendants, was an ESA case involving only one species local to the transferee court.

In addition, the Federal Defendants relied heavily on *Citizen Advocs. For Responsible Expansion, Inc. (I-Care) v. Dole*, 561 F. Supp. 1238 (D.D.C. 1983), citing the case on Doc 16-1 pages 11, 19, and 28 of their brief.  They neglect to inform this Court that *I-Care* dealt solely with

the planning and construction of two segments of highway located in Fort Worth, Texas, where three of the four plaintiffs resided, and where the issues focused exclusively on local land concerns in Fort Worth.  The two-page opinion, decided almost 40 years ago, does not help the Federal Defendants meet their burden of persuasion in this markedly different case of first impression dealing with fundamental issues of national significance under five federal statutes.  *See Van Antwerp*, 523 F. Supp. 2d at 13 (refusing to transfer because alleged violations of the ESA and CWA are "national in scope . . .[b]ased on both Congress' express declarations of the national character of the statutes at issue in this case and the fact that the issue [before that court] is whether federal agencies complied with federal law . . .").

Indeed, not a single case cited by the Federal Defendants is even closely analogous to this case.  Accordingly, the Federal Defendants' citations to readily distinguishable cases does nothing to help them meet their heavy burden of showing that the private and public criteria outweigh the strong presumption in favor of honoring the Plaintiffs' choice of venue.

Not only is venue proper in this Court, but the overwhelming weight of all the factors that concern convenience and justice favor maintaining this case in the District of Columbia rather than transferring it to the District of Massachusetts.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the Federal Defendants' motion to transfer.

Dated:          January 31, 2022          Respectfully submitted,

                                        */s/Theodore Hadzi-Antich*
                                        THEODORE HADZI-ANTICH
                                        CA Bar No. 264663
                                        tha@texaspolicy.com
                                        ROBERT HENNEKE
                                        TX Bar No. 24046058

rhenneke@texaspolicy.com
CONNOR MIGHELL
TX Bar No. 24110107
cmighell@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:    (512) 472-2700
Facsimile:    (512) 472-2728

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically on January 31, 2022, with the Clerk of the Court for the District of Columbia by using the CM/ECF system, causing electronic service upon all counsel of record.

*/s/Theodore Hadzi-Antich*
THEODORE HADZI-ANTICH

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule LCvR7(e), the foregoing document contains 29 pages and does not exceed the maximum limit of 45 pages.

*/s/Theodore Hadzi-Antich*
THEODORE HADZI-ANTICH