UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEAFREEZE SHORESIDE INC., et al**, <br><br>Plaintiffs, <br><br>v. <br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR, et al.**, <br><br>Defendants. | |
| **RESPONSIBLE OFFSHORE DEVELOPMENT ALLIANCE**, <br><br>Plaintiff, <br><br>v. <br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR, et al.**, <br><br>Defendants. | Case Nos. 21-cv-3276 (CRC) <br> 22-cv-237 (CRC) |

**OPINION AND ORDER**

In 2015, the Department of Interior's Bureau of Ocean Energy Management ("BOEM") approved a lease to develop an offshore wind-turbine project (the "Vineyard Wind project") in an area off the coast of Massachusetts, south of Martha's Vineyard, as part of an Obama Administration initiative to hasten wind-energy development in the Atlantic Ocean. Plaintiffs in these two related cases challenge the approval of that project under a host of federal laws, including the Administrative Procedure Act ("APA"), the Outer Continental Shelf Lands Act ("OCSLA"), the Endangered Species Act ("ESA"), and the Clean Water Act ("CWA").

The first complaint is brought by a group of commercial fishermen (and their trade associations) who make their livelihoods fishing in the Vineyard Wind area.  See Complaint, Seafreeze Shoreside Inc., et al. v. Dep't of Interior, et al., No. 21-cv-3276 (CRC) (D.D.C. 2021), ECF No. 1.  The second is brought by the Responsible Offshore Development Alliance ("RODA"), a Washington, D.C.-based nonprofit whose members include fishing associations, seafood processors, and 120 fishing vessels.  See Complaint, Responsible Offshore Development Alliance v. Dep't of Interior, et al., No. 22-cv-237 (CRC) (D.D.C. 2022), ECF No. 1.

Plaintiffs allege that the development of the Vineyard Wind site will "result in the permanent abandonment of commercial fishing in the entire project area" and that as a result, their businesses will be "economically ruined."  Seafreeze Compl. ¶ 3; see also id. ¶ 178 (claiming BOEM failed to show that the project would not unreasonably interfere with economic or navigational uses of the Outer Continental Shelf); RODA Compl. ¶ 79 (noting that "seafood processors and distributors will see lower volumes and/or quality of product" if they are unable to operate in the Vineyard Wind lease area).  Plaintiffs also claim that the agencies failed to consider the effects the Vineyard Wind project will have on endangered species, including the North Atlantic Right Whale, whose habitat overlaps substantially with the planned project area. Seafreeze Compl. ¶¶ 88, 136–37, 178; RODA Compl. ¶¶ 106–12 (describing harm from the project to the North Atlantic Right Whale's habitat); id. ¶ 179 (noting impact the project could have on various whale, dolphin, porpoise, and seal species).

The defendants—the Department of the Interior, the Bureau of Land Management, the National Marine Fisheries Service, the Department of the Army, the Army Corps of Engineers, and their respective secretaries and administrators—move to transfer both cases to the District of Massachusetts, where three other related lawsuits are pending and where the defendants argue

the relevant events occurred. For the following reasons, the Court agrees with the defendants and will grant the motion to transfer.

But first, some housekeeping. The company that owns the lease, Vineyard Wind, LLC, has moved to intervene in the RODA case. See RODA ECF No. 5. The motion is unopposed, ECF No. 12, and the Court granted a similar motion allowing Vineyard Wind to intervene in the Seafreeze case. Accordingly, the Court will grant the motion to intervene.

Also, RODA filed a motion to consolidate the two cases, to which the Seafreeze plaintiffs consent but the government opposes. RODA, Mot. to Consolidate, ECF No. 8; Defs.' Resp., ECF No. 9. Seafreeze has also moved to strike portions of the administrative record. Seafreeze, Mot. to Strike, ECF No. 31. Because the Court will transfer the cases, it will deny these motions without prejudice to refiling in the transferee district. Given the considerable overlap between the parties' arguments, however, the Court will address both motions to transfer in this singular opinion.

## I. Legal Standards

District courts have discretion to transfer a case to another venue "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); see Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior, 358 F. Supp. 3d 1, 5–6 (D.D.C. 2019) (Cooper, J.). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted). The moving party bears the initial burden of establishing that transfer is proper. City of W. Palm Beach v. U.S. Army Corps of Eng'rs, 317 F. Supp. 3d 150, 153 (D.D.C. 2018). There is a "presumption that plaintiffs' forum choice should be left undisturbed," and the movant

"ordinarily bears a heavy burden in opposing the plaintiff[s'] chosen forum." Detroit Int'l Bridge Co. v. Gov't of Canada, 787 F. Supp. 2d 47, 52 (D.D.C. 2011) (citations and internal quotation marks omitted).

District courts conduct a two-step analysis to determine whether a case should be transferred.  First, the moving party must establish that the plaintiff could have brought its suit in the transferee forum.  28 U.S.C. § 1404(a).  Next, the moving party must demonstrate that both the public and private interest factors, taken together, weigh in favor of transfer.  Courts generally consider three public interest factors and six private interest factors.  The former are "(1) the transferee forum's familiarity with the governing laws . . . ; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." City of W. Palm Beach, 317 F. Supp. 3d at 156 (citation omitted).  The latter are "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . ; and (6) the ease of access to sources of proof."  Id. at 154 (citation omitted).

## II.   Analysis

The government urges the Court to transfer both cases because, in its view, the District of Columbia has little connection to the approval of the project aside from the fact that the relevant agencies have offices in Washington.  Seafreeze Mot. to Transfer, ECF No. 16-1 at 1–2.  It also notes that the location of the project, the plaintiffs and their businesses, and the alleged environmental impacts are all located in or around Massachusetts.  Id. at 2.  The Seafreeze plaintiffs respond that the agency decisions made in this case are in fact national in scope, as the Vineyard Wind project is just the first step in the federal government's comprehensive wind-energy plan.  Seafreeze Opp'n, ECF No. 19 at 1–2.  RODA largely makes similar arguments.

4

See generally RODA Opp'n, ECF No. 11.  In addition, RODA contests the first prong of the transfer test: whether the suit could have been filed in Massachusetts.  Id. at 6; 28 U.S.C. § 1404(a).  Accordingly, the Court will start with RODA's venue argument before turning to the public and private interest factors.

A. Venue in Massachusetts

The first prong of the transfer statute requires the movant to establish that the plaintiff could have brought its suit in the transferee forum.  28 U.S.C. § 1404(a).  In actions, like this one, that raise a federal question by naming a federal agency or a United States official in his or her official capacity as a defendant, venue is proper in any judicial district where: "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).

RODA claims venue is not proper in the District of Massachusetts under either (A) or (C), because "neither the Alliance nor any Defendant resides in Massachusetts."  RODA Opp'n at 7.  In RODA's view, then, venue in Massachusetts can be established only under (B)—in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e)(1)(B).  RODA argues the events giving rise to this lawsuit did not occur in Massachusetts because the key agency decisionmakers involved in the process have offices in Washington, D.C., Sterling, Virginia, and Silver Spring, Maryland, and conducted their analyses from those offices.  RODA Opp'n at 9–10.  That may well be so.  But in many cases, "a plaintiff will have a choice among multiple districts where a substantial portion of the underlying events occurred."  Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 29 (D.D.C. 2013) (quoting Modaressi v. Vedadi, 441 F. Supp. 2d 51, 57 (D.D.C. 2006)).  Nothing in the venue statute

5

"mandates that a plaintiff bring suit in the district where the *most substantial* portion of the relevant events occurred."  Id. (emphasis in original).[1]

Here, while some of the work done on the Vineyard Wind permit undoubtedly occurred in the National Marine Fisheries Service ("NMFS") office in Silver Spring, Maryland, the defendants have submitted uncontested declarations from agency officials attesting that as much, if not more, work occurred in regional agency offices in Gloucester, Massachusetts, and Concord, Massachusetts.  See RODA Jacek Decl. ¶¶ 5–7, ECF No. 10-3 (noting that the Army Corps of Engineers review of the Vineyard Wind permit occurred entirely in the New England District Office of the Corps in Concord or at Jacek's residence, also in Massachusetts); RODA Harrison Decl. ¶¶ 4–5, ECF No. 10-4 (the Biological Opinion prepared by NMFS regarding the Vineyard Wind permit was prepared in Gloucester, Massachusetts, and then reviewed by agency staff in Silver Spring, Maryland).  Indeed, it appears that the work at issue in this case involved a coordinated effort of multiple agencies that occurred between offices in Concord, Gloucester, and Woods Hole, Massachusetts, and Silver Spring, Maryland.  See RODA Pentony Decl. ¶ 7, ECF No. 10-5 (describing coordination between the Massachusetts and Silver Spring offices).  This is sufficient to establish venue in the district of Massachusetts under 28 U.S.C. § 1391(e)(1)(B).  See Villa v. Salazar, 933 F. Supp. 2d 50, 55 (D.D.C. 2013) (in a case challenging agency action, a district where "much of the investigation that formed the basis of [the agency's] decision" is a proper venue in addition to the District of Columbia).

---

[1] It is worth noting that agency analysis that occurred in Silver Spring, Maryland, or Sterling, Virginia, would be a basis for venue in the District of Maryland or the Eastern District of Virginia, not the District of Columbia.  Plaintiff RODA admits as much in their briefing.  See RODA Opp'n at 10 (arguing key decisions "took place in the Washington, D.C. area").

The Court is not persuaded in any case by RODA's argument that venue can be proper only under § 1391(e)(1)(B).  For one, RODA is a 501(c)(6) organization—a not-for-profit business association—not a corporation.  "Unlike corporations, which are citizens of any state in which they are incorporated and of the state where they have their principal place of business, unincorporated entities carry the citizenship of their members."  Adolph Coors Co. v. Truck Ins. Exchange, No. Civ. A. 04-2150RMU, 2005 WL 486580, at *2 (D.D.C. Feb. 28, 2005); see also Kaplan Co. v. Indus. Risk Ins., 86 F.R.D. 484, 485 (E.D. Pa. 1980) ("It is settled law that when an unincorporated association sues or is sued in federal court, its citizenship for diversity purposes is deemed to be that of each of its members." (citing United Steelworkers of America v. R. H. Bouligny, Inc., 382 U.S. 145 (1965))).  RODA helpfully provided an affidavit from its Executive Director that lists its members and their locations; over sixty of the vessels and businesses appear to be located in Massachusetts.  See RODA Hawkins Decl., Ex. 1, ECF No. 11-1.  Therefore, venue is likely proper in the District of Massachusetts under § 1391(e)(1)(C) because multiple RODA members reside there.[2]

For all those reasons, the Court concludes that venue is proper in the District of Massachusetts for the RODA plaintiffs.  For the same reason, although not contested by the Seafreeze plaintiffs, that case could have been brought in the District of Massachusetts as well.

---

[2] Although the Court does not reach the argument, the defendants also claim that venue is proper under § 1391(e)(1)(A) because "the residence of a federal agency is not exclusively in Washington, D.C." RODA Defs.' Reply, ECF No. 16, at 2.  Rather, "[o]fficers and agencies of the United States can have more than one residence, and venue can properly lie in more than one jurisdiction." Bartman v. Cheney, 827 F. Supp. 1, 2 (D.D.C. 1993).  As noted in the defendant's motion, at least two of the relevant agencies have offices in Massachusetts, and work related to this project was performed at those offices, including the Corps' office in Massachusetts that issued the specific permit that the plaintiffs challenge.  RODA Mot. at 15.  Venue may therefore be proper in the District of Massachusetts under § 1391(e)(1)(A) as well, but the Court need not resolve that question here, given its findings above.

Accordingly, the first the first prong of § 1404(a) is satisfied for both cases, and the Court will proceed to apply the public and private interest factors.

B. Public Interest Factors

1. *Local Interests*

"'[P]erhaps the most important factor' in the motion-to-transfer balancing test is the interest in having local controversies decided locally." Alaska Wilderness League v. Jewell, 99 F. Supp. 3d 112, 116 (D.D.C. 2015) (quoting Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs, 893 F. Supp. 2d 49, 54 (D.D.C. 2012)).  The public's interest is served by resolving cases "within the view of people 'whose rights and interests are in fact most vitally affected by the suit.'" Charleston, 893 F. Supp. 2d at 57 (citing Adams v. Bell, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)); see also id. (public interest factor favored transfer where the issue was "one of substantial local interest and controversy" in Charleston, South Carolina, and it was "the citizens of Charleston who [would] most clearly feel the effects of the project").  Therefore, "suits such as this one, which involve water rights, environmental regulation, and local wildlife . . . should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit.'" Trout Unlimited v. USDA, 944 F. Supp. 13, 19–20 (D.D.C. 1996) (quoting Adams, 711 F.2d at 167 n.34) (cleaned up).

The complaints in both cases indicate that the impact of the Vineyard Wind project— whether positive or negative—will be felt primarily in Massachusetts and nearby states.  The project itself is located off the southern coast of Nantucket, Massachusetts.  Seafreeze Compl. ¶ 2.  And, the economic impact of the project will be felt primarily in the Vineyard Wind lease area.  Id. ¶¶ 3, 6–11.  The Seafreeze plaintiffs "are comprised of commercial fisherman and their trade associations" that fish in that area, and are primarily located in Massachusetts, Rhode

Island, and New York.  Id. ¶¶ 3, 6-11.  And, "[t]heir livelihoods and economic futures depend on fishing *in the Vineyard Wind project area*."  Id. ¶ 3 (emphasis added).  The same is true for RODA.  Although RODA has members that operate "from Maine to Virginia," the vast majority of its members are located in Massachusetts, New Jersey, and Rhode Island, compared to only a handful in the south- or mid-Atlantic.  See Hawkins Decl. ¶ 18; Ex. 1.  Any harm to their livelihoods and businesses will therefore be felt in Massachusetts and the surrounding states.

The environmental and ecological harms that plaintiffs highlight in their complaints will also be felt in the Vineyard Wind lease area.  Seafreeze Compl. ¶ 116; RODA Compl. ¶ 107.  As described above, plaintiffs' claim that the Vineyard Wind project will have serious effects on endangered species like the North Atlantic Right Whale, among others, given the proximity of the lease area to these species' marine habitats.  See Seafreeze Compl. ¶ 88(a); RODA Compl. ¶ 106 (noting one of the "safe havens" for the North Atlantic Right Whale "is the area immediately south-southwest of Nantucket Island—the exact place that the Bureau has selected" for the Vineyard Wind project).

Finally, defendants point out that in addition to the possible negative impacts on fishing, local wildlife, and marine ecosystems in the Massachusetts area, any positive impact of the project will additionally flow to the residents of Massachusetts in the form of "clean, wind-powered electricity provided to 400,000 homes."  RODA Mot. at 11; see also Defs.' Reply, Ex. 1 at 5 (amicus brief filed by the Commonwealth of Massachusetts in one of the related cases in the District of Massachusetts describing the impact of the Vineyard Wind project on the state's clean energy targets).  As with many other cases like it, "the resolution of this action will have its most profound impact on [Massachusetts] residents who live [and work] in the area of the proposed construction project."  Valley Cmty. Pres. Comm'n v. Mineta, 231 F. Supp. 2d 23, 47 (D.D.C.

9

2002). Therefore, "this case should be litigated within the view and reach of the people who will be most vitally affected by its outcome"—the residents of Massachusetts. Gulf Restoration Network v. Jewell, 87 F. Supp. 3d 303, 316 (D.D.C. 2015).

Plaintiffs resist the Court's conclusion. First, they argue that the true location of the events they are challenging is Washington, D.C., because the Vineyard Wind project, and other projects like it, are "being driven by . . . the Federal Defendants from their respective headquarters in the District of Columbia." Seafreeze Opp'n at 8. RODA further argues that this case has "national implications" because (1) the lease area is actually located on federal waters in the Outer Continental Shelf, and (2) the project is merely the first part of a national plan to bring renewable energy throughout the country by 2030. RODA Opp'n at 15–16.

Although the location of the key decision-makers may be relevant to the Court's overall venue determination, that is not the focus of this factor. See Trout Unlimited, 944 F. Supp. at 19–20 (public interest in having "localized controversy decided at home" turns primarily on the water systems, wildlife, and people who are affected); Wildearth Guardians v. U.S. Bureau of Land Mgmt., 922 F. Supp. 2d 51, 55 (D.D.C. 2013) ("substantial impacts [of the challenged project] on the local economy" weighed heavily in favor of transfer under this public interest factor) (internal citation and quotation marks omitted). The interest in having local controversies decided locally is not lessened because the plaintiffs seek judicial review of agency action. Trout Unlimited, 944 F. Supp. at 19; Ngonga v. Sessions, 318 F. Supp. 3d 270, 276 (D.D.C. 2018).

Additionally, although the Vineyard Wind lease area may be located in federal waters, that fact alone does not automatically make the District of Columbia a better forum. It is clear from the plaintiffs' complaints that the bulk of any impact on fisheries and endangered species would be felt in and around Massachusetts. Indeed, plaintiffs admit that the states affected by

the project are in New England, not the District of Columbia or its neighboring states. See RODA Opp'n at 15–16 (noting Rhode Island has been involved in the project in addition to Massachusetts); Seafreeze Opp'n at 24 (arguing the impact of the defendants' actions are not felt solely in Massachusetts, but many states "throughout New England").  The fact that the project is technically located in federal, rather than state, waters does not alter the fact that the people "whose rights and interests are in fact most vitally affected by the suit" live and work in Massachusetts.  Adams, 711 F.2d at 167 n.34; see Trout Unlimited, 944 F. Supp. at 15 (finding the people of Colorado had a substantial interest in the resolution of the case, even though the relevant dispute occurred on federally managed national-forest land).

As for the plaintiffs' final argument, the importance of the Vineyard Wind project to the federal government's overall wind-energy goals does not turn an otherwise local controversy into a "national" one.  The plaintiffs do not challenge a new regulation or law that applies nationwide. They have challenged the approval of a specific offshore development lease—one that happens to be located hundreds of miles outside the District of Columbia.  District courts in this circuit have consistently held "that the mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer."  Charleston, 893 F. Supp. 2d at 55.  Indeed, the courts prefer to resolve cases involving "water rights, environmental regulation, and local wildlife . . . in the forum where the people 'whose rights and interests are in fact most vitally affected'" reside.  Trout Unlimited, 944 F. Supp. at 19 (quoting Adams, 711 F.2d at 167 n.34); see also Sierra Club v. Flowers, 276 F. Supp. 2d 62, 68 (D.D.C. 2003) (noting that "precedent in this circuit does not require or even encourage resolution . . . of [Endangered Species Act] and other environmental claims involving nationally known resources" in the District of Columbia).

11

Accordingly, the first factor favors transfer to the District of Massachusetts.

    *2. Familiarity with Governing Law*

All federal courts are "presumptively competent to decide" issues of federal law. City of W. Palm Beach, 317 F. Supp. 3d at 156 (citation omitted). When the action concerns federal law, "neither court is better suited than the other to resolve the[] issues." Valley Cmty. Pres. Comm'n, 231 F. Supp. 2d at 45.

Under this factor, courts can also consider "the courts' respective knowledge of the parties and facts" as well as any "considerable experience" the transferee court may have in a particular area of the law. Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d 36, 40 (D.D.C. 2010). These considerations can include the pendency of related litigation. Indeed, pendency of related cases can weigh heavily in favor of a transfer. Wildearth Guardians, 922 F. Supp. 2d at 55 ("Most importantly, the desire to avoid multiplicity of litigation as a result of a single transaction or event weighs heavily in favor of transfer."); Bartolucci v. 1-800 Contacts, Inc., 245 F. Supp. 3d 38, 50 (D.D.C. 2017) ("Courts in this district have consistently held that the interests of justice are better served when a case is transferred to the district where related actions are pending.") (collecting cases).

There are two prior-filed lawsuits pending in the District of Massachusetts that challenge the same agency actions and are based on the same administrative record that will form the record in these cases. See Ack Residents Against Turbines, et al v. Bureau of Ocean Energy Mgmt., No. 1-21-cv-11390-IT (D. Mass); Allco Renewable Energy Ltd., et al. v. Haaland, et al., No. 1-21-cv-11171-IT (D. Mass). Furthermore, RODA has challenged the same agency actions on appeal to the First Circuit. See Responsible Offshore Development Alliance v. Haaland, No. 21-1660 (1st Cir. 2021). All three cases remain pending. The existence of parallel litigation in

12

another district often weighs in favor of transfer, in order to promote judicial economy and avoid "duplicative [proceedings] and potentially inconsistent rulings." Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n, 856 F. Supp. 2d 186, 195 (D.D.C. 2012); see also FTC v. Cephalon, Inc., 551 F. Supp. 2d 21, 29 (D.D.C. 2008) ("[T]he most significant factor weighing in favor of transferring [a] case is the presence of closely related litigation."). The cases in the District of Massachusetts predate the cases here. Judicial economy therefore favors transfer.

### 3. Relative Congestion

The defendants and Seafreeze agree that the District of Massachusetts is not any more or less congested that the District of Columbia. See Seafreeze Mot. at 17; Seafreeze Opp'n at 20. RODA contests this point, arguing the congestion in Massachusetts is slightly higher. According to RODA, the District of Columbia has roughly 40 more actions per judgeship, but has a much shorter median time between filing and disposition of cases. RODA Opp'n at 14. However, "the relative complexity of the two courts' dockets may not be reflected in [] purely mathematical statistic[s]" and, in any event, "this one factor, on its own, does not outweigh all of the others." W. Watersheds Project v. Jewell, 69 F. Supp. 3d 41, 44 (D.D.C. 2014). Accordingly, this factor is neutral.

### C. Private Interest Factors

#### 1. Plaintiff and Defendant's Choice of Forum

Courts ordinarily afford great deference to a plaintiff's choice of forum. Wyandotte Nation v. Salazar, 825 F. Supp. 2d 261, 268 (D.D.C. 2011). A plaintiff's choice of forum is given less deference, however, "when that choice is not [the] plaintiff's home forum," and even less when the chosen forum "has no meaningful ties to the controversy." Id. (internal citations and quotation marks omitted).

The plaintiffs' choice of forum is entitled to less deference here. The Seafreeze plaintiffs are not residents of the District, and "substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum." Niagara Pres., Coal., Inc. v. Fed. Energy Regul. Comm'n, 956 F. Supp. 2d 99, 104 (D.D.C. 2013) (internal citation and quotation marks omitted). RODA, by contrast, does reside and have its office in the District of Columbia. RODA, Opp'n at 18; Hawkins Decl. ¶ 2. Therefore, RODA's choice to bring suit in its home forum would ordinarily receive deference. See Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (because two of five plaintiffs had offices in the District of Columbia, their choice of D.C. as their forum deserved deference). RODA also participated in the Vineyard Wind permitting process from D.C. by submitting comment letters to various agencies located in the District. RODA Opp'n at 19.

However, as described above, RODA is a nonprofit association and therefore carries the citizenship of its members. See Adolph Coors Co., 2005 WL 486580, at *2. RODA has 72 members located in Massachusetts—meaning Massachusetts is a "home" forum for RODA as well. "When the plaintiffs reside in the transferee district, their choice of forum is also diminished." Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 33 (D.D.C. 2008). Furthermore, as noted above, RODA is challenging the same administrative action in an appeal before the First Circuit. Accordingly, the plaintiffs' choice of forum deserves less deference in this case, and weighs only weakly against transfer. See Wildearth Guardians, 922 F. Supp. 2d at 55 (where "the District of Columbia has no meaningful ties to the controversy," plaintiffs' choice of forum "weighs only weakly against transfer" (internal citation and quotation marks omitted)).

The defendants' choice of forum is also part of the analysis. Here, the defendants propose transfer to a forum where related proceedings are already pending. Courts generally

14

prefer to unify related proceedings in the district where the cases were first filed. See ITT World Commc'ns, Inc. v. FCC, 621 F.2d 1201, 1208 (2d Cir. 1980) ("[T]here is a policy of unifying related proceedings in a single court, and obtaining consistent results."); see also Wise v. United States, 128 F. Supp. 3d 311. 317 (D.D.C. 2015) ("'[T]he general principle is to avoid duplicative litigation' between federal district courts." (quoting Colo. River Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

Because the plaintiffs' choice of forum is entitled to less relative weight in this case, and the defendants' proposed forum would unify all related cases in a single district, the first two private interest factors are essentially a wash.

    2. *Where the Claim Arose*

As described above, defendants have established that a substantial amount of the agency work done on the Vineyard Wind lease occurred in Massachusetts. See RODA Jacek Decl. ¶¶ 5–8 (noting that the Army Corps of Engineers review of the Vineyard Wind permit occurred entirely in the New England District Office of the Corps in Concord, Massachusetts, or at Jacek's residence in Massachusetts). In addition, the harms alleged in plaintiffs' complaints—to their fishing businesses, livelihoods, and the affected marine habitats and wildlife—accrued entirely in or around Massachusetts. See Seafreeze Compl. ¶¶ 3, 6–11, 174–76, 78 (noting the economic effects on plaintiffs' businesses "in the Vineyard Wind project area" and impact on local endangered species "in the project area"). The plaintiffs do not identify any effect on commercial fishing, navigation, or wildlife in the D.C. area.

Plaintiffs contend that their claims arose in Washington, D.C., where the federal agencies have their headquarters and where various documents were signed. See Seafreeze Opp'n at 16-17; RODA Opp'n at ¶ 5. However, "the involvement of a federal agency located in Washington,

15

D.C. and its officials in a particular dispute does not necessarily militate against transfer to another district." Wyandotte Nation, 825 F. Supp. 2d at 269; see also Pac. Mar. Ass'n v. NLRB, 905 F. Supp. 2d 55, 61 (D.D.C. 2012) (transferring case outside of the District of Columbia because "any role played by officials in the District of Columbia is overshadowed by the fact that their decisions were based on work done by government employees in Oregon.") (internal quotation marks omitted). Therefore, the third private interest factor weighs in favor of transfer.

### 3. Other Private Factors

The remaining private interest factors are relatively minor and do not factor heavily in the Court's analysis. The parties agree that the case will be decided on the administrative record, without the need for witness testimony. See, e.g., RODA Compl. ¶ 15. In such cases, "the convenience of witnesses and the ease of access to sources of proof, are neutral with respect to transfer." Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv., 75 F. Supp. 3d 353, 358 (D.D.C. 2014) (quoting Charleston, 893 F. Supp. 2d at 56); see also Charleston, 893 F. Supp. 2d at 56 ("[C]onvenience of witnesses and the ease of access to sources of proof . . . have less relevance to the transfer inquiry because this case involves judicial review of an administrative decision.") (cleaned up).

## III. Conclusion

In sum, the Court finds that the first two public interest factors weigh in favor of transfer. In particular, the factor that is arguably the most important—the interest in having local controversies decided locally—favors transfer to Massachusetts. Alaska Wilderness League, 99 F. Supp. 3d at 116. The existence of parallel litigation in Massachusetts weighs in favor of transfer as well. The third public interest factor is neutral.

The Court also finds that two of the six private interest factors weigh in favor of transfer, one weighs weakly against, and the other three are neutral.

Accordingly, it is hereby

**ORDERED** that in Case No. 1:21-cv-3276, Defendants' [16] Motion to Transfer the Case to the District of Massachusetts GRANTED.  It is further

**ORDERED** that Plaintiffs' [22] Unopposed Motion for Judicial Notice is GRANTED; and that Plaintiffs' [31] Motion to Strike is DENIED without prejudice to refiling the motion in the transferee district.  It is further

**ORDERED** that in Case No. 1:22-cv-237, Vineyard Wind's [5] Motion to Intervene is GRANTED; Plaintiff's [8] Motion to Consolidate is DENIED without prejudice to refiling the motion in the transferee district; and Defendants' [10] Motion to Transfer the Case to the District of Massachusetts is GRANTED.

**SO ORDERED**.

                                                                                            _____
CHRISTOPHER R. COOPER
United States District Judge

Date:  June 27, 2022